S97A2027. EBON FOUNDATION, INC. v. OATMAN et al.
S97A2028, S97A2030. ALEXANDER v. CHAPMAN et al.
(two cases).
(498 SE2d 728)

THOMPSON, Justice.

These consolidated cases are before the court on direct appeal from the grant of an interlocutory injunction and appointment of a receiver.

In 1994, Florence Hicks Alexander purchased the former Tift College campus in Forsyth, Georgia, and, along with others, established the Ebon Foundation, a non-profit corporation, incorporated under the laws of the District of Columbia for educational purposes. Alexander served as president and chairperson of the board of directors of Ebon Foundation, which obtained tentative classification by the IRS as a private foundation, thus allowing donors tax deductible status. In 1995, Alexander leased the 44-acre campus to Ebon Foundation, and in September 1995, Ebon Foundation began operation of Ebon Academy, a kindergarten through twelfth grade school, on the campus.

In January 1997, students and parents were informed that the school had been closed due to financial difficulties and they were told to vacate the premises immediately. Shortly thereafter, a group of students and their parents (Chapman et al.) filed a lawsuit against Alexander and Ebon Foundation seeking damages for breach of contract, intentional infliction of emotional distress, fraud, and conversion.

Joyce Oatman, a director of Ebon Foundation, moved to inter-

vene to bring a derivative action on behalf of Ebon Foundation based on Alexander's alleged mismanagement of the business. At the same time, Oatman sought a TRO to prevent Alexander from consummating a pending contract for the sale of the school property (scheduled for closing four days later), based on allegations that Alexander wrongfully appropriated the assets of Ebon Foundation to her personal use and would dissipate the proceeds of the sale to the detriment of Ebon Foundation. The Attorney General and Secretary of State of Georgia also moved to intervene — the former to ensure that Ebon Foundation's assets upon dissolution are committed to nonprofit purposes, and the latter as the proper party where violations of the Georgia Charitable Solicitations Act of 1988, OCGA § 43-17-1 et seq., are alleged. The State joined Oatman's request for a TRO.

The trial court granted a TRO preventing Alexander from consummating the sale of two parcels of property (the 44-acre school tract and another 98-acre tract) for a period of 30 days. After hearing from both parties, the trial court modified the TRO, to permit the sale of the school property under the supervision of a receiver. In a subsequent order, the court allowed intervention by the State of Georgia and by Joyce Oatman; allowed Oatman's proposed derivative action to be filed; released the 98-acre parcel from the TRO; and, denied Alexander's motion to dismiss the underlying complaint for lack of jurisdiction. Finally, the court entered an order extending injunctive relief during the pendency of the litigation.[1]

## Intervention

1. Alexander and Ebon Foundation challenge the order allowing intervention by Oatman and by the State of Georgia, on several grounds.

(a) First, appellants assert that the trial court erred in granting the motions to intervene ex parte. See *Gregory v. Tench*, 138 Ga. App. 219 (225 SE2d 753) (1976). The record shows that the trial court granted the motions, *subject to* any properly supported objections by appellants. Shortly thereafter, hearings were conducted during which all parties were represented by counsel and were given a full opportunity to respond to the intervenors' requests and to show why the earlier ruling should be set aside. After hearing argument and evidence, and considering briefs of the parties, the court restated its

---

[1] In Case No. S97A2027, Ebon Foundation appeals from the grant of the interlocutory injunction and the order permitting Oatman and the State of Georgia to intervene. In Case Nos. S97A2030 and S97A2028, Alexander appeals from the same orders. Since the briefs contain virtually duplicative enumerations of error and arguments, the contentions of the parties will be treated jointly.

previous ruling by written order. Any harm in initially allowing the intervention ex parte was cured by the subsequent proceedings.

(b) It is also asserted that the trial court erred in allowing Oatman to intervene to bring a derivative action on behalf of Ebon Foundation because the notice requirements of OCGA § 14-2-742 had not been satisfied. That Code section provides that a shareholder derivative proceeding may not be commenced until 90 days after written demand has been made upon the corporation to take suitable action. See also *Dunn v. Ceccarelli*, 227 Ga. App. 505 (489 SE2d 563) (1997). However, two exceptions to the 90-day waiting period are contained in the statute — if the shareholder has been "notified that the demand has been rejected by the corporation," or if "irreparable injury to the corporation would result" from the 90-day delay. OCGA § 14-2-742 (2). Oatman asserted that immediate action was necessary because a sale of the property was imminent and Alexander was likely to have retained the profits. As such, the trial court acted within its discretion in waiving the 90-day waiting period and allowing the derivative action to proceed.

(c) Appellants further submit that the intervenors failed to meet their burden of establishing a right of intervention under OCGA § 9-11-24 (a) (2). As required by that Code section, an intervenor must establish: "an interest relating to the property or transaction which is the subject matter of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." See also *Brown v. Truluck*, 239 Ga. 105 (236 SE2d 60) (1977).

Oatman sought to intervene as a director of Ebon Foundation[2] for purposes of bringing a shareholder's derivative action predicated on allegations that Alexander had misappropriated and mismanaged corporate funds, commingled private and corporate funds, and generally treated the corporation as her alter ego. It was further asserted that if a sale of the real property were to take place, Alexander would convert the proceeds of the sale for her personal use, leaving the corporation without assets. When Oatman's motion to intervene was filed, both Alexander and Ebon Foundation were represented by the same counsel in the Chapman lawsuit. And although there appeared to be evidence of misappropriation of corporate funds, Ebon Foundation brought no cross-claim against Alexander. Oatman thus asserted that the interests of the corporation were not adequately represented, and it was established at the evidentiary hearing that Alex-

---

[2] Although Ebon Foundation later sought to remove Oatman as a director, it was shown that she served in that capacity at the time the corporate mismanagement was alleged to have occurred, and at the time of filing the motion to intervene.

ander had repeatedly directed the transfer of funds from Ebon Academy's student escrow account to other accounts under her control.

The Attorney General sought to intervene in the proceedings, asserting that, as a charitable, non-profit organization, Ebon Foundation has solicited and received donations in furtherance of its purported education purposes; that upon dissolution, Ebon Foundation's assets must be committed to non-profit purposes; and that the Attorney General is the proper party to protect such interests.

Intervention was sought by the Secretary of State to seek civil sanctions for transactions which are prohibited by the Georgia Charitable Solicitations Act, OCGA § 43-17-13.

The trial court determined that the intervenors have asserted interests relating to the property which is the subject matter of the action, and are so situated that disposition of the action may impair or impede their ability to protect those interests. These findings are supported by the evidence. It is also apparent that the interests of Ebon Foundation or those of the State were not being adequately represented by the original plaintiffs in the lawsuit. The trial court did not err in ruling that the intervenors satisfied the test of OCGA § 9-11-24. See *Southwest Ga. Prod. Credit Assn. v. Wainwright*, 241 Ga. 355 (2) (245 SE2d 306) (1978).

### *Notice and hearing*

2. The ex parte TRO was granted without notice after a showing that immediate and irreparable injury would result unless relief is granted before Alexander and Ebon Foundation could be heard in opposition, along with a sworn certification by counsel why notice should not be required. See OCGA § 9-11-65 (b) (1) and (2). The resulting TRO was served upon Alexander and Ebon Foundation along with a rule nisi ordering them to appear at a hearing within 30 days. All parties and their counsel attended the subsequent hearings and were given an opportunity to be heard. Thus, the TRO and subsequent interlocutory injunction were issued in compliance with the requirements of OCGA § 9-11-65.

Although Alexander submits that service of the underlying lawsuit was not perfected under OCGA § 9-11-4 (d) (7), "[t]here is no requirement of personal service prior to the issuance of an interlocutory injunction. Notice to the adverse party is all that is required by [OCGA § 9-11-65 (a) (1)]." *Consortium Mgmt. Co. v. Mut. America Corp.*, 246 Ga. 346, 348 (3) (271 SE2d 488) (1980). Alexander does not assert defective notice. And any complaint directed to lack of personal jurisdiction over her as a nonresident under OCGA § 9-10-91 was not ruled on below and will not be considered here.

## Issuance of the injunction

3. " 'A trial court has the discretion to grant an interlocutory injunction to preserve the status quo and balance the conveniences of the parties pending final adjudication. [Cit.] This court will not disturb that discretion unless it is abused or there is no evidence to support the ruling. [Cit.]' [Cit.]" *Rife v. Corbett*, 264 Ga. 871 (455 SE2d 581) (1995). See also OCGA § 9-5-8.

(a) Oatman's verified complaint for a TRO satisfied the requirements of OCGA § 9-11-65 (b) (1).

(b) Appellants assert that the trial court abused its discretion in issuing the TRO which encompassed Alexander's personal property and thus exceeded the scope of what was requested. However, Oatman expanded her request at the initial hearing and again in her amended pleadings. By enjoining sale of the realty, including personalty situated "on said property," the court merely sought to maintain the status quo. There was no abuse of discretion.

(c) Appellants assert that the trial court abused its discretion in issuing the injunction because an adequate remedy at law exists. However, intervenors showed that there was substantial commingling of corporate and personal assets and that an injunction was the only means of protecting the interests of the parties until those assets could be sorted out by a final adjudication of the various claims. A court may appoint a receiver when any fund or property is in litigation and the rights of the parties may not be otherwise protected. OCGA § 9-8-1; *Richardson v. Roland*, 267 Ga. 34 (472 SE2d 301) (1996). Compare *Housing Authority v. MMT Enterprises*, 267 Ga. 129 (1) (475 SE2d 642) (1996). Appointment of a receiver is specifically authorized in cases arising under the Charitable Solicitations Act. OCGA § 43-17-13 (a) (2) (A) (vi).

(d) While the TRO initially prohibited sale of the school property, the court balanced the interests of the parties and modified its order to allow the sale to proceed under the supervision of a court-appointed receiver. Accordingly, the issuance of the injunction did not operate oppressively against the defendants. Compare *Everett v. Tabor*, 119 Ga. 128 (46 SE 72) (1903).

(e) Appellants assert that the trial court erred in failing to require intervenors to post a bond as a prerequisite to the issuance of the injunction. However, under OCGA § 9-11-65 (c), the court "*may* require the giving of security" upon issuing a TRO or interlocutory injunction. (Emphasis supplied.) Appellants have not shown that they requested such security, or how they were harmed by the failure to require a bond. We find no abuse of the court's discretion.

*Judgments affirmed. All the Justices concur.*

DECIDED FEBRUARY 23, 1998 —
RECONSIDERATION DISMISSED APRIL 2, 1998.

*Jones, Cork & Miller, H. Jerome Strickland, Jr.,* for Ebon Foundation, Inc.

*Ham, Jenkins, Wilson & Wangerin, Kevin A. Wangerin, C. Nelson Jarmagin, Patrise M. Perkins-Hooker,* for Alexander.

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, John B. Ballard, Jr., Senior Assistant Attorney General, Debra Golymbieski, Assistant Attorney General, Sullivan & Kight, Leo J. Kight, Jr.,* for Oatman and Chapman.