S07A1567. HAMPTON ISLAND FOUNDERS et al. v. LIBERTY CAPITAL et al.
(658 SE2d 619)

THOMPSON, Justice.

The primary question for decision in this appeal is whether the trial court abused its discretion in granting a temporary injunction which prohibited plaintiff from engaging in "any act which would have the effect" of contesting the voting rights of investors in plaintiff's member entities, when those investors wanted to use their votes to gain control of plaintiff and dismiss this lawsuit. Under the facts of this case, we answer this question affirmatively.

Wade Shealy arranged to purchase and develop land for a residential retreat on Hampton Island. To accomplish his goals, he formed Hampton Island Founders, LLC ("Founders"), the plaintiff in this case. Founders is comprised of four legal entities which were also formed by Shealy: Hampton Island Preservation Properties, Inc. ("HIPP"), Hampton Island Preservation Investments, LLC ("HIPI"), Hampton Island Preservation, LLC ("HIP"), and South Hampton Island Preservation Properties, LLC ("SHIPP"). Each of the four

---

member entities has an equal voice in determining who controls and manages Founders. Thus, whoever controls three of these four member entities can take control of Founders.

When Founders was formed, Shealy controlled and managed each of the four member entities; he also controlled and managed Founders.

In September 2006, Founders and Liberty Capital, LLC ("Capital") entered into a joint venture and established a new company, Hampton Island, LLC (the "joint venture"), to continue development of the retreat. The terms of the joint venture are reflected in a letter of intent and operating agreement which provide, inter alia, that Founders would contribute real estate to the joint venture in exchange for an initial 40 percent membership interest; and that Capital would use "commercially reasonable efforts" to secure $50 million in loans in exchange for a 60 percent membership interest. The parties agreed that if Capital did not obtain a development loan of at least $30 million by November 15, 2006, it would have no further funding obligation, its ownership interest in the joint venture would be reduced to 10 percent, and Founders' ownership interest would increase to 90 percent. Founders transferred the real estate to the joint venture, which was to be managed by yet another entity — Hampton Island Management, Inc. ("HIMI").

On November 14, 2006, Capital secured a loan in the amount of $8.5 million on behalf of the venture. Two days later, on November 16, Shealy declared Capital in default of its obligation to secure funding. He took steps to terminate the joint venture's relationship with HIMI and name himself as sole manager of the joint venture. Founders then brought suit against Capital and others seeking a declaration that Capital did not meet its obligation to secure the requisite development loan by November 15, an injunction prohibiting Capital from exercising any control of the joint venture, and damages. Thereafter, defendants filed a motion for injunctive relief to maintain the status quo as of November 15.

On January 3, 2007, following a hearing at which documents were received and argument heard, the trial court issued a temporary injunction decreeing, until further order: (1) that, as set forth in the operating agreement of the joint venture, HIMI is the sole manager of the joint venture; (2) that neither Founders nor Shealy was to manage the joint venture at that point in time; and (3) that Founders and Shealy, and their agents, are enjoined from claiming that any entity other than HIMI is the manager of the joint venture. Founders filed a motion to vacate, dissolve or modify the January 3 order, and a hearing was set for January 12, 2007. The trial court denied Founders' motion, ruling that the injunction would remain in effect.

The trial court also permitted two of Founders' member entities, HIP and HIPI, as well as investors in Founders' member entities, to intervene in the lawsuit. The intervenors/investors sought a "mandatory injunction" and a hearing was set for March 30. Founders moved to continue the hearing, but the trial court denied the motion.

At the hearing, the intervenors/investors requested an injunction to allow meetings of Founders' member entities to take place on April 2. The stated purpose of these meetings was to vote to determine who would manage the member entities. If they were permitted to vote, the intervenors/investors informed the court, they would remove Shealy as manager of the member entities, remove him as the manager of Founders, install a manager of Founders who would look favorably on defendants' cause, and dismiss Founders' lawsuit. The trial court granted the relief sought by issuing a "mandatory injunction" restraining anyone affiliated with Founders from taking "any act which would have the effect of denying intervenors' right to vote as shareholders" of HIP, HIPI and HIPP.[1]

Founders filed a motion for supersedeas and stay of the injunction in the trial court on April 2. The trial court waited five weeks before denying the motion on May 8. Thereupon, Founders filed an emergency motion to stay pending appeal in this Court. We granted the motion on May 15, 2007, and reaffirmed our ruling by order on June 11, 2007. In the meantime, with the exception of SHIPP, Founders' member entities conducted meetings at which the intervenors/shareholders voted to remove Shealy as their manager and replace him with William Cole. Ostensibly, this left Shealy in control of only one (SHIPP) of the four member entities of Founders. Thereupon, defendants and intervenors informed Shealy that he was being removed as the manager of Founders, and that Bruce E. Bowers was to be installed as manager of Founders in his stead. Defendants, intervenors and Bowers also took action to replace Gambrell & Stolz,

---

[1] HIP's and HIPI's documents show that, at the outset, Shealy (25 percent), William Cole (15 percent), Wayne Lyle (15 percent) and Charles Carey (15 percent) were the only investors who were empowered to vote their ownership interests in those entities. Cole, Lyle and Carey claim to have voted Shealy out, and Cole in, as manager of these entities. Shealy claims that that vote was invalid because, at the time of the vote, as opposed to the time of creation of the entities, the ownership interests changed and Cole, Lyle and Carey did not own a controlling interest. This claim is based on provisions in the operating agreements stating that a member's ownership interest is based on his capital account which is to be adjusted from time to time. The document establishing HIPP likewise shows that Shealy (25 percent), Cole (15 percent), Lyle (15 percent) and Carey (15 percent) are voting members. It also shows intervenors/investors (Larry Becker and others) to be non-voting members. Lyle's and Carey's right to vote as members of HIPP is in question because they were not issued shares in that entity. Thus, whether intervenors/investors are entitled to vote as members of HIPP is a significant question in determining who controls that entity. The trial court has not sought a definitive answer to that question.

Founders' attorney, with new counsel.[2] When Shealy and Gambrell & Stolz refused to recognize the legitimacy of these acts, defendants and intervenors returned to the trial court and requested an order to substitute counsel. The trial court denied the request, explaining that out of "an abundance of caution" it appeared that this Court's stay pending appeal prevented the trial court from ruling on the matter.[3]

Plaintiff appeals and enumerates error upon the issuance of the "mandatory injunction" on March 30, 2007, the previous injunction issued on January 3, 2007, and other rulings of the trial court. We consider these enumerations seriatim.

1. *Injunction of March 30.* The grant or denial of an interlocutory injunction will not be interfered with by this Court in the absence of a manifest abuse of discretion. *State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498, 509 (5) (556 SE2d 114) (2001). We agree with plaintiff that the trial court manifestly abused its discretion in entering the injunction on March 30, 2007.

The trial court's March 30 order reads:

> Intervenors' motion for an expedited mandatory injunction having come before the court for hearing, and the Court having reviewed the entire record and the briefs and arguments of all the parties, and the limitations on the motion for purposes of the March 30, 2007 hearing as announced in open court by Intervenors' counsel.
> It is hereby ordered that the Intervenors' Motion for Mandatory Injunction as limited in open court is granted.
> It is hereby further ordered . . . that [Founders] and its [member entities] and [the joint venture] and any person or entity acting in concert therewith, is enjoined from any act which would have the effect of denying intervenors' right to vote as shareholders of [HIPP], or as members of [HIPI] and [HIP].
> This order shall remain in full force and effect until further order of this Court. The remaining aspects of the Expedited

---

[2] While this case was pending in this Court, Bowers notified Gambrell & Stolz that Founders is now represented by Casey Gilson, P.C., and that Gambrell & Stolz was no longer Founders' counsel. Both Gambrell & Stolz and Casey Gilson, P.C., have appeared as counsel in this appeal.

[3] However, a cautionary approach did not prevent the trial court from advising defendants and intervenors to seek clarification from this Court as to whether the stay pertains to a motion to substitute counsel. Nor did it prevent the trial court from opining: "[S]hould the Supreme Court then refuse to address the issue . . . then this court will draw the conclusion that said stay order does not prevent this court from hearing and ruling on the motion to substitute legal counsel, and this court will then schedule a hearing on the motion . . . on an expedited basis."

Motion for Mandatory Injunction are reserved until further hearing and order of this Court.

(a) It is axiomatic that the sole purpose of a temporary or interlocutory injunction is to maintain the status quo pending a final adjudication on the merits of the case. *Bailey v. Buck*, 266 Ga. 405 (467 SE2d 554) (1996).

> The status quo is not defined by the parties' existing legal rights; it is defined by the reality of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights.

(Emphasis omitted.) *SCFC ILC v. Visa USA*, 936 F2d 1096, 1100 (10th Cir. 1991).

Here the status quo is that Shealy controls Founders. The March 30 injunction does not maintain that status quo. In fact, it changes the status quo drastically because it enables intervenors/investors to vote, when they may not have been entitled to vote,[4] and prohibits plaintiff from taking any action challenging the effects of intervenors/investors' right to vote. It does this in spite of the fact that intervenors/investors made clear their intention to remove Shealy as manager of Founders and dismiss this lawsuit without any court examining the merits.

(b) Furthermore, in enjoining plaintiff from challenging intervenors/investors' right to vote, the trial court failed to balance the equities properly. A trial court may issue an interlocutory injunction to maintain the status quo until the final hearing if, by balancing the relative conveniences of the parties, it determines that they favor the party seeking the injunction. *Bernocchi v. Forcucci*, 279 Ga. 460, 461 (614 SE2d 775) (2005). That is because an interlocutory injunction "is a device to keep the parties in order to prevent one from hurting the other whilst their respective rights are under adjudication. . . . [T]here must be some vital necessity for the injunction so that one of the parties will not be damaged and left without adequate remedy." *Price v. Empire Land Co.*, 218 Ga. 80, 85 (126 SE2d 626) (1962).

Here, the record fails to show that the trial court gave due consideration to the relative equities of the parties. Had it done so, it would have had to conclude that the relative equities favor plaintiff, not intervenors/shareholders and defendants. That is because, in the absence of the injunctive relief sought by intervenors/shareholders,

---

[4] See fn. 1, *supra*.

defendants would be inconvenienced only because they would have to await the outcome of the litigation. On the other hand, the issuance of the injunction will result in the dismissal of this lawsuit without giving plaintiff an opportunity to have its claims heard. Thus, the harm to plaintiff resulting from the grant of the "mandatory injunction" is great, while the harm resulting from the denial of such an injunction would be minimal. Simply put, there was no "vital necessity" for the issuance of the March 30 injunction. *Price v. Empire Land Co.*, supra.

(c) Defendants and intervenors argue that the order does not prevent plaintiff from contesting the results of the vote. In this regard, they point to the language in the order referencing "limitations" put upon the injunction "as announced in open court." We cannot accept this argument for the simple reason that it is improper for an injunction to incorporate terms by reference. OCGA § 9-11-65 (d); *Hendrix v. Hendrix*, 254 Ga. 662 (333 SE2d 596) (1985). Moreover, the plain language of the order forbids plaintiff from challenging the intervenors' purported right to vote and the results of that vote. Thus, were it not for this Court's stay pending appeal, plaintiffs would be enjoined from taking the very position that they have been taking in this appeal, to wit: that intervenors/shareholders have no voting rights and that any vote by them is null and void.

(d) Defendants and intervenors also assert that this appeal is moot because the meeting took place and intervenors cast their votes to remove Shealy. We disagree. The appeal is not moot in this case because Shealy has not stepped down and the injunction continues to prevent plaintiff and Shealy from challenging the vote. Moreover, until the results of the vote are given effect, this Court is able to review the injunction and, if necessary, fashion an appropriate remedy.

2. *Injunction of January 3.* The trial court did not err in entering the temporary injunction on January 3, 2007. Contrary to plaintiff's contention, that injunction did not settle the issue as to whether HIMI or Shealy would be entitled to manage the joint venture. See *Milton Frank Allen Publications v. Ga. Assn. of Petroleum Retailers*, 223 Ga. 784, 788 (158 SE2d 248) (1967). The order simply declared HIMI to be the manager of the joint venture until further order of the court. Inasmuch as HIMI was in control of the joint venture when this controversy began, the order was entered properly to preserve the status quo pending an adjudication on the merits. *State Farm Mut. Auto. Ins. Co. v. Mabry*, supra; *Bailey v. Buck*, supra.

3. *Intervention.* The trial court granted "intervention of right"[5] to intervenors/investors pursuant to OCGA § 9-11-24 (a) (2) which reads:

> Upon timely application anyone shall be permitted to intervene in an action: . . .
> When the applicant claims an interest relating to the property or transaction which is the subject matter of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

This suit was brought by Founders to determine whether Capital breached its contractual obligation to provide sufficient funding for the joint venture. Intervenors are either member entities of Founders or investors in the member entities. Assuming, without deciding, that intervenors have a sufficient interest in the property or transaction which is the subject matter of the lawsuit brought by Founders, we are hard pressed to see how the lawsuit impedes intervenors' ability to protect that interest, why that interest is not adequately protected by Capital and the other defendants, or why intervenors cannot pursue an independent remedy against Founders and Shealy. OCGA § 9-11-24 (a) (2); *Stephens County Soil &c. v. Wright Bros. Constr. Co.*, 215 Ga. App. 352 (451 SE2d 802) (1994). Accordingly, we agree with plaintiff that the trial court erred in permitting HIP, HIPI, and the investors in the member entities to intervene in this lawsuit.

*Ebon Foundation v. Oatman*, 269 Ga. 340 (498 SE2d 728) (1998), upon which intervenors rely, does not require a different result. In determining whether intervention is appropriate, each case must be judged on its own facts; no one case can be said to be dispositive. In *Ebon Foundation*, plaintiffs brought suit against Ebon and its president. Oatman, a director of Ebon, sought intervention to bring a derivative action on behalf of Ebon. Intervention and the derivative action were deemed appropriate to ensure that Ebon's assets remained intact. Rather than intervene to bring a derivative action in this case, intervenors seek intervention to gain control of plaintiff and dismiss its claims.

4. *Discovery.* Plaintiff sought from defendants and third parties the discovery of documents pertaining to the development loan. In

---

[5] OCGA § 9-11-24 (a) governs "intervention of right." OCGA § 9-11-24 (b) governs "permissive intervention."

particular, plaintiff requested the production of any document reflecting defendants' efforts to obtain financing for the joint venture.[6] The trial court denied the motion, reasoning as follows:

> [T]he burden . . . is going to be on Liberty Capital . . . did they or did they not fund the thirty million dollars. If they did, they will be able to prove that. You don't need to see any more documents, candidly, to know whether or not they did that. I think they can prove — excuse me, the burden is on them now to show that they did come up with the thirty million dollars. . . . I don't see you need to go over any more of their documents, that you've got enough documents and so forth.

Plaintiff enumerates error on that ruling.

> The trial court does have a wide discretion in the entering of orders permitting or preventing the use of interrogatories or taking of depositions for discovery which are oppressive, unreasonable, unduly burdensome or expensive, harassing, harsh, insulting, annoying, embarrassing, incriminating or directed to wholly irrelevant and immaterial or privileged matters, or as to matter concerning which full information is already at hand. *Travis Meat &c. Co. v. Ashworth*, 127 Ga. App. 284, 287, 288 (193 SE2d 166) [(1972)].

*Young v. Jones*, 149 Ga. App. 819, 824-825 (256 SE2d 58) (1979). Here, however, the trial court denied access to the documents plaintiff sought primarily because it believed plaintiff had no use for them in going forward with the case. This approach was misguided. Our discovery rules provide:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information

---

[6] For example, plaintiff sought the joint venture's general ledger, which would indicate what monies the joint venture received from Capital and when such monies were received.

sought appears reasonably calculated to lead to the discovery of admissible evidence.

OCGA § 9-11-26 (b) (1). See also *Hanna Creative Enterprises v. Alterman Foods*, 156 Ga. App. 376, 378 (274 SE2d 761) (1980) (discovery rules are designed to remove potential for secrecy and provide parties with knowledge of all relevant facts to reduce element of surprise at trial). Upon the return of this case to the trial court, plaintiff's discovery requests should be re-examined applying the proper standard.

5. *Recusal.* From our review of the record, and, in particular, the transcripts of the hearings conducted below, it would appear that, at times, the trial judge may have lost his objectivity in this difficult and complicated case.[7] Nevertheless, it cannot be said that the trial court erred in denying plaintiff's motion to recuse because the evidence does not require a finding of bias. See generally *Sears v. State*, 262 Ga. 805 (426 SE2d 553) (1993) (question is whether judge's impartiality can be questioned reasonably, bearing in mind the reality that any judge will have had extensive contact with the community and local bar). " 'It is as much the duty of a judge not to grant the motion to recuse when the motion is legally insufficient as it is to recuse when the motion is meritorious.' [Cit.]" *Henderson v. McVay*, 269 Ga. 7, 9 (2) (494 SE2d 653) (1998).

6. *Contempt.* This Court's order staying the "mandatory injunction" pending appeal did not direct defendants and intervenors to do, or not do, anything; it merely rendered the March 30 injunction unenforceable until further order of this Court. Thus, defendants and intervenors cannot be held in contempt for violating this Court's stay.

*Judgment affirmed in part and reversed in part. Sears, C. J., Melton, J., and Judge Herbert E. Phipps and Judge A. Quillian Baldwin, Jr., concur. Carley, J., concurs in Division 6 and in the judgment. Hunstein, P. J., Benham and Hines, JJ., not participating.*

DECIDED MARCH 10, 2008.

*Baker, Donelson, Bearman, Caldwell & Berkowitz, Robert G. Brazier, Steven G. Hall, Gambrell & Stolz, Kevin A. Stine, Seaton D. Purdom*, for appellants.

*Chapar & Associates, Albert A. Chapar, Jr., Roy E. Barnes, Brock, Clay, Calhoun & Rogers, Charles C. Clay, Carlton L. Kell, Cauthorn & Nohr, Thomas E. Cauthorn III, Greenberg Traurig, Jeffrey M. Smith, Oliver, Maner & Gray, Andrew M. Wilkes, James L. Pannell,*

---

[7] See, e.g., fn. 3, supra.

*Christopher L. Ray, Mark A. Johnson, McLain & Merritt, Robert B. Hill, John F. Salter, Jr.*, for appellees.
*Casey Gilson, George P. Shingler*, amicus curiae.