**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 9, 2019**

# In the Court of Appeals of Georgia

A19A1481. HUNTER v. WILL et al.

MILLER, Presiding Judge.

Tommy Hunter appeals from the trial court's dismissal of his appeal to the Supreme Court of Georgia and the trial court's subsequent order denying his motion to be relieved from the final judgment. Hunter argues that the trial court lacked jurisdiction to dismiss the appeal, that the dismissal was based on extrinsic evidence, that ex parte communications tainted the proceedings, and that he was entitled to a hearing on his motion to be relieved from the final judgment. Our thorough review of the record discloses no reversible error in the trial court's dismissal of Hunter's appeal. Accordingly, we affirm.

"A trial court's decision to grant or deny a motion to dismiss an appeal under OCGA § 5-6-48 (c) is reviewed under an abuse of discretion standard." (Citation

omitted.) *Park Regency Partners, L.P. v. Gruber*, 271 Ga. App. 66, 70 (1) (608 SE2d 667) (2004).

The procedural history of this case is not only complex and convoluted, but it is also the first of its kind before this Court. An ethics complaint was filed against Commissioner Tommy Hunter as a result of certain comments he made on social media, and the Gwinnett County Board of Ethics ("the Ethics Board") issued findings and a recommendation that he be publicly reprimanded. Hunter filed in the trial court a writ of quo warranto, prohibition, mandamus and verified complaint for declaratory judgment and preliminary and permanent injunctive relief against (1) the Ethics Board; (2) David Will, in his individual and official capacity as the chair of the Ethics Board; (3) Charles Rousseau, in his individual and official capacity as a member of the Ethics Board; and (4) the Gwinnett County Board of Commissioners ("the Board of Commissioners").[1] Among other requests, Hunter sought to invalidate certain Ethics Board ordinances and he sought the removal of some members of the Ethics Board.

---

[1] The Board of Commissioners maintains that it is not the real party of interest in this case and that it is entitled to sovereign immunity. "[T]he trial court did not decide these questions, and we decline to address them for the first time here." *Fairfield Plantation Action Committee, Inc. v. Plantation Equity Group, Inc.*, 215 Ga. App. 746 (3) (452 SE2d 147) (1994).

In June 2017, the trial court denied Hunter's claims, determining that the Ethics Board and the ordinance creating it are not constitutionally infirm. Hunter filed a timely notice of appeal on July 17, 2017, designating the Supreme Court of Georgia as having jurisdiction over the appeal. In the notice, Hunter stated, "the clerk shall include the transcript for the June 1, 2017 Emergency Hearing for Temporary Restraining Order. . . ."[2] After approximately seven months, however, that transcript had not been filed. On February 16, 2018, the Board of Commissioners filed in the trial court a motion to dismiss Hunter's appeal, arguing, inter alia, that Hunter was responsible for filing, or causing to be filed, the transcript which he had demanded be included in the record. The Board of Commissioners added that Hunter had failed to ensure that a complete hearing record was timely transmitted to the Supreme Court. The remaining appellees joined in the motion.

Hunter responded that "through oversight and inadvertence," his counsel did not contact the clerk. Concurrently, on February 19, 2018, he also filed an amended notice of appeal — again designating the Supreme Court as having jurisdiction — excluding his request for the transcript. The trial court clerk then transmitted the

---

[2] The notice of appeal indicated that the hearing at issue occurred on June 1, but there appears to be no dispute that the hearing date was actually June 5.

3

record to the Supreme Court. In the interim, however, the parties filed multiple pleadings concerning the motion to dismiss, and the trial court had not yet ruled on the motion.

On March 12, 2018, an associate attorney with the law firm representing the Board of Commissioners telephoned the trial court's law clerk, claiming that the transmittal of the record to the Supreme Court was "erroneous" due to the pending motion to dismiss Hunter's appeal. That same day, lead counsel for the Board of Commissioners learned of this conversation, informed Hunter's counsel, and then wrote a letter to the trial court. In the letter, which was copied to Hunter's counsel, the Board of Commissioners apologized for the ex parte communication but nevertheless argued that the record had been erroneously transmitted to the Supreme Court due to the pending motion to dismiss Hunter's appeal and requested the trial court to direct that the record be retrieved from the Supreme Court.

The trial court issued an order on March 14, 2018, scheduling a hearing on the motion to dismiss and directing the trial court clerk to transmit the order to the Supreme Court of Georgia to prevent the appeal from being docketed prior to a ruling on the motion to dismiss. Hunter filed a "verified motion to vacate [the March 14, 2018 order] and/or motion to recuse," and the trial court entered an order of voluntary

4

recusal. The case was reassigned to another judge who scheduled a hearing on the motion to dismiss. After oral argument, in April 2018, the trial court ruled that because the record had already been transmitted, it no longer had jurisdiction to consider the motion to dismiss. Simultaneously, the trial court requested that the Supreme Court remand the record to enable a ruling on the motion to dismiss.

Months later, in August 2018, the trial court issued a final judgment in which it explained that it had received an email from the Gwinnett County chief deputy clerk about correspondence that office had with the Supreme Court's clerk's office. The email from the Supreme Court's clerk's office explained that the appeal had not yet been docketed and also stated:

> We had already reviewed it in our system, so it does not read rejected. It is, however, deleted from our system, per the Trial Court[']s request. . . . If a case has not received a docket number and we are asked to reject or delete it, per the trial court, it is the same as never having been submitted.

The Supreme Court's clerk's office further stated that if the appeal were to be pursued, the record would have to be resubmitted. Having reviewed the email correspondence, the trial court determined that the transmittal of the record was deleted from the Supreme Court system and that it could therefore rule on the motion

5

to dismiss. The trial court dismissed Hunter's appeal pursuant to OCGA § 5-6-48 (c), reasoning that the delay in filing the June transcript was "unreasonable, inexcusable and was caused by [Hunter]."

Hunter then filed a motion for relief from judgment and to set aside the court's final judgment dismissing his appeal, and he also requested that the trial court vacate the March 2018 order that sought to prevent the docketing of the appeal. The trial court denied Hunter's motion, and this appeal followed.[3]

1. First, Hunter claims that the trial court erred in dismissing his appeal because, in the absence of an order from the Supreme Court, the trial court never regained the authority to rule on the motion to dismiss. Because of the unique circumstances of this case, however, we are compelled to disagree.

Preliminarily, when the record was transmitted to the Supreme Court of Georgia, the trial court lost the authority to decide the motion to dismiss Hunter's appeal. Supreme Court Rule 74 provides that an

> [a]ppellee shall be deemed to have waived any failure of the appellant
> to comply with the provisions of the Appellate Practice Act relating to
> the filing of the transcript of the evidence and proceedings or transmittal

---

[3] We note that Hunter initially filed this appeal with the Supreme Court of Georgia, which then transferred it to this Court.

6

of the record to this Court unless objection thereto was made and ruled upon in the trial court prior to transmittal, and such order is appealed as provided by law.

This Court has an almost identical rule regarding waiver. See Court of Appeals Rule 20. More recently, in a whole court decision, we reaffirmed the longstanding precedent that a trial court loses the ability to rule on a motion to dismiss once the record has been transmitted to the appellate court. *Noorani v. Sugarloaf Mills Ltd. Partnership*, 308 Ga. App. 168, 169-170 (706 SE2d 750) (2011). See also *Strese v. Strese*, 237 Ga. 334 (1) (227 SE2d 749) (1976) (applying the former version of Supreme Court Rule 74). And decades ago, we clarified that this principle of waiver applies whether the record is transmitted "erroneously or not." *Turner v. Taylor*, 179 Ga. App. 574, 575 (1) (a) (346 SE2d 920) (1986). There is no dispute that the record was transmitted. Thus, the trial court initially lacked authority to rule on the appellees' motion to dismiss.

Normally, trial courts regain the authority to rule on a motion to dismiss an appeal through either a remand of an appeal or an explicit order from the appellate court. See, e.g., *Rois-Mendez v. Stamps*, 312 Ga. App. 136, 138 n.1 (717 SE2d 718) (2011) (explaining that we remanded the first appeal to the trial court, allowing the

7

court to exercise its authority to dismiss the appeal); *Winzer v. EHCA Dunwoody, LLC*, 277 Ga. App. 710, 711 (627 SE2d 426) (2006) ("[T]his court returned the record to the trial court, informing the lower court . . . that we could not accept the appeal. . . ."); *Miller v. Ingles Market, Inc.*, 214 Ga. App. 817, 817-818 (449 SE2d 166) (1994) (remanding the case for a ruling on the motion to dismiss); *Price v. Ortiz*, 152 Ga. App. 651, 652 (263 SE2d 527) (1979) (explaining that we previously "returned the case to the trial court" via an order).

Given the distinctive factual context of this case, however, we conclude that despite the absence of a formal order from the Supreme Court, the trial court was authorized to rule on the motion to dismiss Hunter's appeal at the time of its ruling in August 2018. As Hunter recognizes, the record shows that the trial court appears to have been awaiting an order from the Supreme Court. In fact, when the trial court made the record remand request in April 2018, it also stayed the supplementation of the record "pending the direction of the Georgia Supreme Court regarding the requested remand of the record."

Thereafter, the Supreme Court's docket clerk explained by email that the case had been deleted from the Supreme Court's system, per the trial court's request. She added: "If a case has not received a docket number and we are asked to *reject or*

8

*delete* it, per the trial court, it is the same as *never having been submitted*." This correspondence came after the Gwinnett County clerk's office specifically asked the Supreme Court's clerk's office to send a "rejection." It would strain credulity for us — an inferior appellate court — to hold that under these circumstances the Supreme Court was required to do something more before the trial court could rule on the motion to dismiss. This is not a case in which the trial court proceeded independently while the Supreme Court remained silent, and there is no indicia in the record that an order from the Supreme Court was forthcoming.

We are also particularly disinclined to hold that an order from the Supreme Court was warranted here because there is neither a statute nor a court rule enunciating the minimum procedural requirement for a trial court to regain authority to rule on the motion to dismiss following the transmittal of the record. See, e.g., *In Interest of I.L.M.*, 304 Ga. 114, 118 n.12 (816 SE2d 620) (2018) (all courts generally have had a "longstanding and inherent" judicial power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants," though this power can be limited by statute) (citation omitted). Thus, no statute or rule of court necessitated an order.

Hunter adamantly suggests that because the Supreme Court did not issue an order, its clerk's office deleted or rejected the record without authority. Nothing in the record supports this assumed impropriety. "Until the contrary appears, it will be conclusively presumed that a public officer not only acted within the scope of his legal authority but acted properly in the performance of such duty and only when authorized so to act." (Citation and punctuation omitted.) *Smith v. Northside Hosp., Inc.*, 302 Ga. 517, 524-525 (2) (807 SE2d 909) (2017); see also *Taylor v. Young*, 253 Ga. App. 585, 586 (1) (b) (560 SE2d 40) (2002) ("Clerks and deputy clerks of court are public officers and are presumed to discharge their duties properly.") (citation omitted). Therefore, we are unpersuaded that the trial court erred in adjudicating the motion to dismiss for lack of an order from the Supreme Court.

2. Hunter claims that the trial court erred in dismissing his appeal based on extrinsic evidence.[4] We disagree because the trial court did not abuse its discretion in taking judicial notice of the fact that the transmittal of the record had been deleted from the Supreme Court's system.

---

[4] Insofar as Hunter asserts that the email constituted hearsay, we do not address this argument because Hunter did not mention it below when challenging the trial court's judgment. *Burdette v. McDowell*, 321 Ga. App. 507, 508 (1) (739 SE2d 28) (2013).

Whether requested by a party or not, a trial court may take judicial notice of "a fact which is not subject to reasonable dispute," in that it is "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." OCGA § 24-2-201 (b) (2), (c). In taking judicial notice of a fact, the trial court "dispens[es] with the need for any evidence regarding it." (Citation and punctuation omitted.) *Graham v. State*, 275 Ga. 290, 293 (2) (565 SE2d 467) (2002); *Brown v. C & S Nat. Bank*, 245 Ga. 515, 518 (265 SE2d 791) (1980) (in taking judicial notice from the clerk's calendar, the trial court "did not consider extrinsic evidence"). "Judicial notice may be taken at any stage of the proceeding,"[5] and a plain reading of the current version of OCGA § 24-2-201 dictates that the trial court can take judicial notice of an adjudicative fact without giving the parties advance notice. See OCGA § 24-2-201 (e) (2013) ("A party shall be entitled, upon timely request, to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. *In the absence of prior notification*, such request may be made after judicial notice has been taken.") (emphasis supplied). "[A] court has wide discretion to take judicial notice of facts," *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F3d 1197, 1204-1205 (IV) (A) (11th Cir. 2004) (applying Fed.

---

[5] OCGA § 24-2-201 (f).

R. Evid. 201 (c)), although the process is "highly limited." (Citation omitted.) Id. We are mindful that the abuse-of-discretion standard, while not "toothless," is "a deferential standard of review." (Citation omitted.) *RES-GA LJY, LLC v. Y.D.I., Inc.*, 322 Ga. App. 607, 609 (745 SE2d 820) (2013).

Here, the trial court took judicial notice of the fact that the transmittal of the record had been deleted from the Supreme Court's system. In doing so, it identified its source of information as the email from the Supreme Court clerk, explained that it had reviewed the email, and attached the email to its order, which bears the Supreme Court insignia and a Supreme Court email address. See *Valdivia v. Schwarzenegger*, 599 F3d 984, 994 (I) (G) (9th Cir. 2010) ("Judicial notice is used to supplant authentication of 'adjudicative facts.'").

The Supreme Court's clerk's office "is the repository of . . . official documents filed with the Court" and "is responsible for maintaining all case files and tracking the progress of cases through the Supreme Court."[6] Clearly, the clerk's office is the official repository of the Court's records. It is difficult to conceive of a more veritable source than the actual clerk's office for purposes of confirming that a record has been deleted from the Supreme Court's system and attesting to the status of the appeal once

[6] https://www.gasupreme.us/court-information/clerks-office/.

12

that deletion has occurred. And, as the Ethics Board aptly highlights, our case law is replete with instances of trial and appellate courts depending and acting upon information relayed by the clerk's offices. See *Taylor v. State*, 285 Ga. App. 697, 701-702 (4) (647 SE2d 381) (2007) ("[T]he trial judge exercised informed and sound discretion" by removing an empaneled juror after being informed by the clerk's office that the juror's child had been admitted to the hospital); *Farrar v. Georgia Bd. of Examiners of Psychologists*, 280 Ga. App. 455, 456 (634 SE2d 79) (2006) ("[T]he superior court clerk's office has informed us that it does not have a copy of these transcripts."); *Kilgo v. Dept. of Corrections*, 202 Ga. App. 50, 50 n.1 (413 SE2d 507) (1991) ("We are informed by the clerk of the trial court that the . . . order was subsequently vacated. . . ."); *In Interest of J.B.*, 195 Ga. App. 520 (394 SE2d 143) (1990) ("[W]e have been informed by the clerk of the juvenile court that the court's order was never reduced to a written order."). See also *In re Smith*, 211 Ga. App. 493, 495 (1) (439 SE2d 725) (1993) (noting the "complex and on-going" "interrelationship" between the court and its officers). Therefore, we determine that the email correspondence from the Supreme Court's docket clerk is a source whose accuracy cannot reasonably be questioned, and the trial court did not abuse its

13

discretion in taking judicial notice of the fact that the transmittal of the record had been deleted from the Supreme Court's system.

Further, the trial court need not have announced its intention to take judicial notice on the record in a "trial-type procedure," as Hunter implies. Conceivably, the better practice in these circumstances may be to hold another hearing. But OCGA § 24-2-201 (e) contemplates the possibility that there may not even be a hearing if no party timely requests it. *Jaycee Atlanta Dev.*, *LLC v. Providence Bank*, 330 Ga. App. 322, 324 (1) n.4 (765 SE2d 536) (2014) ("Under Georgia's new Evidence Code, a party is entitled to an opportunity to be heard on the propriety of taking judicial notice only 'upon timely request,' which may be made 'after judicial notice has been taken.'").[7] In accordance with OCGA § 24-2-201 (e), Hunter could have requested

---

[7] Before the new Evidence Code took effect, which established a hearing procedure for judicial notice, the Supreme Court of Georgia determined that "if a trial court is going to take judicial notice, it must do so on the record. . . ." *Graves v. State*, 269 Ga. 772 (504 SE2d 679) (1998), disapproved on other grounds by *Jones v. State*, 272 Ga. 900 (537 SE2d 80) (2000). The Court's rationales were: (1) an appellate court is otherwise hindered from reviewing a lower court's findings; (2) an aggrieved party must be able to challenge the deductions drawn from judicial notice or dispute the notoriety or truth of the facts allegedly relied upon; and (3) in the absence of the trial court's announcing on the record an intention to take judicial notice, it might appear that reviewing courts could resort to judicial notice to legitimize an otherwise flawed decision without evidence that judicial notice actually was taken. *Graves*, supra, 269 Ga. at 775 (4) (a). In its order, the trial court clearly identified the email it had reviewed before enunciating that the record had been deleted. Compare *In re*

a hearing after the entry of the trial court's final order. He simply failed to do so. Additionally, we have scoured Hunter's briefs and his motion for relief from the final judgment, and we note that he has never contested the accuracy of the Supreme Court's clerk's statement about the record being deleted. See *Jaycee Atlanta Dev.*, *LLC*, supra, 330 Ga. App. at 324, n.4. Thus, the trial court did not commit any reversible error in taking judicial notice of the status of the appeal.

3. Hunter argues that the trial court erred in denying his motion for relief from the final judgment because (1) the trial court did not hold a hearing on the motion, which Hunter claims was effectively a motion for trial; and (2) ex parte communications and corresponding violations of the Code of Judicial Conduct Rules 2.9 (A), (C), and (D) and Uniform Superior Court Rule 4.1 have "infected the process in this case." Both arguments lack merit.

(a) With regard to Hunter's contention that he was not afforded a hearing, USCR 6.3 provides: "Unless otherwise ordered by the court, all motions in civil actions . . . shall be decided by the court without oral hearing, except motions for new

---

*J.B.*, 289 Ga. App. 617, 619 (658 SE2d 194) (2008) ("[W]e can find no indication in the record that the juvenile court took judicial notice of the fact that Hinesville is located in Liberty County."). None of the parties are claiming that there is any ambiguity in this regard.

15

trial and motions for judgment notwithstanding the verdict." "[O]bjections which go [to] the judgment only, and do not extend to the verdict i.e., the facts, cannot properly be made grounds of a motion for new trial. A motion for new trial seeks to set aside the verdict. No new trial is necessary to correct a judgment or decree." (Citation and punctuation omitted.) *O'Neal v. Winn-Dixie of Atlanta*, 195 Ga. App. 409, 410 (1) (393 SE2d 473) (1990).

The grounds for Hunter's motion for relief from judgment were that the initial trial judge's March 2018 order was "invalid" because it was the result of ex parte contact and he had no opportunity to respond; the final judgment dismissing the notice of appeal was improperly entered based on unexamined extrinsic evidence; and the trial court had "lost all jurisdiction" over the case. Hunter "did not contest factual issues or errors contributing to the verdict, but instead challenged only the trial court's legal conclusions and judgment." *Bank South Mtg., Inc. v. Starr*, 208 Ga. App. 19 (429 SE2d 700) (1993). Simply put, Hunter's allegations were that the trial court's judgments were erroneous, and "where it is only the judgment thereon which is alleged to be erroneous or illegal, this alludes to a matter of law only and there is no need for a new trial." *Sunn v. Mercury Marine*, 166 Ga. App. 567, 568 (305 SE2d 6)

(1983). Therefore, we will not construe Hunter's motion for relief from judgment as a motion for new trial, and no hearing was required.

(b) Lastly, we reject Hunter's argument that ex parte communications have "infected the process in this case."

Specifically, Hunter takes issue with the associate attorney's conversation with the initial trial judge's law clerk after the record was transmitted. Here, however, lead counsel promptly disclosed that the ex parte communication occurred, the initial trial court judge almost immediately recused herself and requested that the clerk reassign the case, and the case was reassigned to a new judge. The trial court then held a hearing at which all parties appeared, represented by counsel, and offered argument. In its written order that followed, the trial court indicated that it had considered the parties' pleadings, arguments, and post-hearing letter briefs, and requested that the Supreme Court remand the record to allow a ruling on the motion to dismiss. We therefore determine that "the intervention ex parte was cured by the subsequent proceedings." *Ebon Foundation v. Oatman*, 269 Ga. 340, 342 (1) (a) (498 SE2d 728) (1998) (reversal not required because after the ex parte intervention the trial court conducted hearings where all parties were represented by counsel and given the opportunity to show why the earlier ruling should be set aside, and the trial court then

17

restated its previous ruling by written order after hearing argument and evidence and considering the parties' briefs); *In re Estate of Sands-Kadel*, 292 Ga. App. 343, 346 (3) (665 SE2d 46) (2008) (appellant failed to show harm resulting from "ex parte communications" because the trial court judge recused from the case, and it was reassigned by the court clerk to another judge in the circuit); *Mary A. Stearns, P.C. v. Williams-Murphy*, 263 Ga. App. 239, 242 (1) (a) (587 SE2d 247) (2003) (subsequent hearing "cured" any procedural defects with previous order that resulted from ex parte hearing).[8]

In sum, Hunter's arguments do not warrant reversal, and we affirm the trial court's order dismissing his appeal to the Supreme Court of Georgia.

*Judgment affirmed. Rickman and Reese, JJ., concur.*

---

[8] Our conclusion dispenses with Hunter's argument that the Supreme Court was "misled" by Gwinnett County into acting on the appeal under the false premise that the attorneys had all agreed that the record was sent prematurely. As discussed, after the recusal of the first trial court judge, the trial court ultimately heard from the parties and issued its own request for the Supreme Court to remand the record.