S09A0371. CISCO v. STATE OF GEORGIA.
S09A0375. MOORE et al. v. STATE OF GEORGIA.
(680 SE2d 831)

HUNSTEIN, Presiding Justice.

These cases involve the constitutionality of the in personam forfeiture provision, OCGA § 16-14-7 (m), in the Georgia RICO (Racketeer Influenced and Corrupt Organizations) Act, OCGA § 16-14-1 et seq. (the "RICO Act"). The Camden County District Attorney in the name and on behalf of the State of Georgia filed an in personam RICO forfeiture complaint against defendants Althea Moore, Tammy Walker and their father, Fairley Cisco, along with nine other individuals and twelve businesses, who are the current or former owners, officers or operators of three truck stops in south Georgia.[1] In the complaint, the district attorney alleged that "the fuel pumps at said [truck stops] were intentionally altered by [d]efendants to indicate that customers were receiving a larger quantity of gasoline or diesel fuel than was actually dispensed"; that defendants "represented to customers that they were receiving premium grade gasoline while in fact they were receiving a lower octane gasoline"; and that "[d]efendants have operated said [truck stops] as a continuous enterprise through a pattern of criminal activity including fraud and theft." Asserting that "[t]he above-listed defendants in personam individually . . . constitute an 'enterprise' as that term is used in [the RICO Act]," the district attorney alleged that defendants "conducted or participated in the affairs of 'The Enterprise' through a 'pattern of racketeering activity' . . . consisting of the following predicate acts," which, among the matters itemized by the district attorney, include the criminal acts of theft by deception and theft of services in violation of OCGA § 16-8-1 et seq.[2] and the unauthorized use of financial transaction cards in violation of OCGA § 16-9-33.

It is uncontroverted that not one of the in personam defendants had been convicted of or was even indicted either for committing any of the alleged crimes set forth as "predicate acts" in the Camden County District Attorney's complaint or for committing the offense

---

[1] The complaint also included in rem forfeiture proceedings against the three truck stops.

[2] The offense of theft by deception is set forth in OCGA § 16-8-3; the offense of theft of services is set forth in OCGA § 16-8-5.

of engaging in racketeering activity in violation of OCGA § 16-14-4.

After an ex parte hearing conducted the same day the complaint was filed, the trial court entered a temporary restraining order as to all of defendants' assets and appointed a receiver to take complete and immediate possession of and control over all of defendants' assets and property, without limitation, including the power to freeze all bank and securities accounts; possess and control all books and records of any entity in which defendants had a direct or indirect interest; and review defendants' records and reports of transactions. Additionally, defendants were ordered to cooperate with the receiver and provide him, inter alia, with "all information requested relating to [defendants'] past and present operations, activities and conditions (financial, legal, or otherwise)."

All of the defendants filed motions to dismiss challenging the constitutionality of the in personam RICO forfeiture provision, OCGA § 16-14-7 (m). After entering an order that superseded the TRO but imposed in its stead a preliminary injunction and maintained the appointment of the receiver, the trial court rejected the constitutional challenges to OCGA § 16-14-7 (m). In its amended order setting forth the reasons for its denial, the trial court relied on OCGA § 16-14-7 (a) ("[f]orfeiture shall be had by a civil procedure known as a RICO forfeiture proceeding") and id. at (b) ("[a] RICO forfeiture proceeding shall be governed by Chapter 11 of Title 9, the 'Georgia Civil Practice Act'"), see also id. at (i) (same), to conclude that "the [RICO] Act contains sufficient safeguards to protect a defendant's rights and property so that an *in personam* action may be pursued without running afoul of the Constitution." Tammy Walker, Althea Moore and several of the businesses appeal this ruling in Case No. S09A0375; Fairley Cisco appeals in Case No. S09A0371. We granted appellants' motion to consolidate their appeals.

This is the first time since 2001 that any appellate court has been presented the opportunity to address OCGA § 16-14-7 (m).[3] In *Pimper v. State of Ga.*, 274 Ga. 624 (555 SE2d 459) (2001), the majority recognized there were "well-grounded concerns regarding the constitutional ramifications of an in personam RICO forfeiture action" such as the one raised in that case, but deemed it necessary to dismiss the appeal without reaching the merits. Id. at 627. No such procedural bar, however, exists in this case. For the reasons that follow, we conclude that OCGA § 16-14-7 (m) provides for criminal in personam forfeiture prior to indictment or conviction; that an in

---

[3] The only case since *Pimper v. State of Ga.*, 274 Ga. 624 (555 SE2d 459 (2001) to reference OCGA § 16-14-7 (m) was *Walker v. State of Ga.*, 281 Ga. App. 526 (636 SE2d 705) (2006), which carefully explained that the forfeiture proceeding in that case was in rem, not in personam. Id. at 529-530.

personam forfeiture defendant must accordingly be afforded all of the constitutional safeguards due a criminal defendant; that Georgia's civil procedure rules, which OCGA § 16-14-7 (m) expressly utilizes, are not adequate to protect an in personam forfeiture defendant's constitutional rights; and that, therefore, OCGA § 16-14-7 (m) is unconstitutional because it deprives in personam forfeiture defendants of the safeguards of criminal procedure guaranteed by the United States and Georgia Constitutions.

1. Appellants contend that OCGA § 16-14-7 (m) provides for criminal in personam forfeiture. We agree. Subsection (m) consists entirely of the following sentence:

> In lieu of the provisions [regarding in rem forfeiture proceedings], the state may bring an in personam action for the forfeiture of any property subject to forfeiture under subsection (a) of this Code section.

We recognize that subsection (a) of OCGA § 16-14-7 states that a RICO forfeiture proceeding under that statute, i.e., in rem and in personam forfeitures, "shall be had by a civil procedure," and that the proceeding is governed by the Georgia Civil Practice Act, OCGA § 9-11-1 et seq. ("CPA"), with certain delineated exceptions. OCGA § 16-14-7 (b), (i). Contrary to appellee's assertion, however, this statutory language does not mandate the conclusion that in personam RICO forfeitures are civil proceedings. The law is well-established that a legislature's description of a statutory proceeding as civil does not foreclose the courts from determining that the proceeding is so punitive in fact that it may not legitimately be viewed as civil in nature, despite the legislature's intent. See *Hudson v. United States*, 522 U. S. 93, 99 (118 SC 488, 139 LE2d 450) (1997); *United States v. Ursery*, 518 U. S. 267, 278 (116 SC 2135, 135 LE2d 549) (1996). See also *Dept. of Revenue of Montana v. Kurth Ranch*, 511 U. S. 767, 777 (114 SC 1937, 128 LE2d 767) (1994) ("legislature's description of a statute as civil does not foreclose the possibility that it has a punitive character"). Thus, "[e]ven in those cases where the legislature 'has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect,' [cit.], as to 'transfor(m) what was clearly intended as a civil remedy into a criminal penalty.' [Cit.]" *Hudson*, supra.

In order to determine whether the in personam RICO forfeiture proceeding is civil, as OCGA § 16-14-7 (a) states, or criminal in nature, we utilize the factors set forth in *Hudson v. United States*,

supra, 522 U. S. at 99-100.[4] We need not address all seven *Hudson* factors, however, because we determine that the criminal nature of the in personam RICO forfeiture proceeding in OCGA § 16-14-7 (m) is overwhelmingly established by the second factor in *Hudson*, namely, "'whether [the sanction] has historically been regarded as a punishment,'" id., and further reinforced by the third and fifth factors, namely, whether the punishment comes into play only on a finding of scienter and whether the behavior to which it applies is already a crime. Id.

The United States Supreme Court has recognized that civil asset forfeiture, with its biblical roots and common law development in medieval England, has for centuries been an in rem proceeding against property, operating under the legal fiction that the seized property, and not the property's owner, is the guilty party. See *United States v. Bajakajian*, 524 U. S. 321, 330 and n. 5 (118 SC 2028, 141 LE2d 314) (1998); *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U. S. 663, 680-682 (94 SC 2080, 40 LE2d 452) (1974). Hence, the physical object itself is "'treated as the offender,' without regard for the owner's conduct." Id. at 684. However, where the forfeiture was in personam, literally "against the person," Black's Law Dictionary, p. 711 (5th ed.), the proceeding was criminal because it required proof of the guilt of the owner. As the United States Supreme Court recognized in *The Palmyra*, 25 U. S. 1 (6 LE 531, 12 Wheat. 1) (1827), a forfeiture in personam is a "personal penalty," id. at 14, such that a "proceeding *in rem* stands independent of, and wholly unaffected by, any criminal proceeding *in personam*." Id. at 15. Thus, unlike in rem forfeiture of guilty property, which descends from one historical tradition, in personam forfeitures are criminal forfeitures "from a different historical tradition: . . . Such forfeitures have historically been treated as punitive, being part of the punishment imposed for felonies and treason in the Middle Ages and at common law. [Cits.]" *United States v. Bajakajian*, supra at 332. See also *United States v. One 1976 Mercedes Benz 280S*, 618 F2d 453, 454 (7th Cir. 1980) (historically, forfeiture is civil proceeding in rem that permits condemnation of property without regard to the owner's culpability by treating a vehicle or other inanimate object "as being itself guilty of

---

[4] Those factors are (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment – retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. Id., 522 U. S. at 99-100.

wrongdoing, regardless of its owner's conduct"); Stahl, Criminal Law: Asset Forfeiture, Burdens of Proof and the War on Drugs, 83 J. Crim. L. & Criminology 274 (II) (F) (1992) (historically, in personam forfeiture actions against owners of property treated as criminal in nature because issue is personal guilt or innocence of owner and forfeiture becomes punishment of that individual).

> The distinguishing characteristics of a criminal forfeiture provision [are] that, unlike the in rem character of civil forfeiture ([cit.]), the personal guilt of the defendant is at issue. [Cits.] That is to say, given the in rem character of civil forfeiture "questions relating to the culpability of the owner of the goods were simply not an issue. It was the goods which were proceeded against, not the owner." [Cit.] The theory of criminal forfeiture is, of course, wholly different inasmuch "as they 'are in personam.' . . . As such these provisions operate as an additional penalty against the defendant. . . ." [Cit.]

(Footnote omitted.) *United States v. Veon*, 538 FSupp. 237, 242 (E.D. Cal. 1982).

The overwhelming weight of this country's jurisprudence establishes by the clearest proof that in personam forfeitures of assets are criminal proceedings grounded upon the culpability of the owner of the property and instituted for the purpose of punishing the owner for an offense. See generally *Hudson v. United States*, supra, 522 U. S. at 100. The only appellate opinion in this country that has been brought to our attention in which an in personam forfeiture was deemed to be a civil proceeding is *Arizona v. Gravano*, 108 P3d 251 (Ariz. App. 2005). The in personam RICO forfeiture proceeding discussed in that case was initiated pursuant to A.R.S. § 13-2314, which requires that state's attorney general or a county attorney to act "on behalf of" a private person in bringing a civil RICO action. Id. at (A). The Arizona statute is thus comparable to OCGA § 16-14-6, which sets forth "[a]vailable civil remedies" for RICO violations which may be pursued by "[a]ny aggrieved person," id. at (b), although, unlike OCGA § 16-14-6, the Arizona statute includes as a civil remedy the option of a civil asset forfeiture.[5] A.R.S. § 13-2314 (D), (E). A RICO forfeiture proceeding is not an available avenue for Georgia's aggrieved citizens but is a proceeding that can

---

[5] The only forfeiture allowed under OCGA § 16-14-6 is the forfeiture of a Georgia corporation's charter upon a finding that its board of directors or managerial agent acted in violation of OCGA § 16-14-4. See OCGA § 16-14-6 (a) (5).

only be initiated by the State pursuant to OCGA § 16-14-7.[6] Accordingly, the county attorney's involvement in *Arizona v. Gravano* was not in his capacity as his county's prosecutor but only as a legally required substitute for a private individual pursuing civil remedies against persons against whom a racketeering claim has been asserted. Thus, pretermitting whether the Arizona Court of Appeals properly analyzed the issue before it, we find *Arizona v. Gravano* distinguishable based on the marked differences between our statutory schemes.[7]

The criminal nature of the in personam RICO forfeiture proceeding appellee has brought against appellants is also established by the statutory requirements for bringing such a proceeding and by the specific facts of this case. Under OCGA § 16-14-7 (a), the only property subject to forfeiture is that "used or intended for use in the course of, derived from, or realized through a pattern of racketeering activity." Unlike the in rem RICO forfeiture proceeding against *property* involved in racketeering activity, which may be pursued without regard to the guilt or innocence of the property owner, see *Walker v. State of Ga.*, 281 Ga. App. 526 (1) (636 SE2d 705) (2006) (in in rem forfeiture, property is the "offender" and nothing suggests personal liability of owner), the entire purpose of the in personam RICO forfeiture proceeding is to target a property owner to whom the innocent-owner defense does not apply, i.e., an owner who has engaged in "an interrelated pattern of criminal activity motivated by . . . pecuniary gain." OCGA § 16-14-2 (b). Because "[t]he interest of an innocent party in the property shall not be subject to forfeiture," OCGA § 16-14-7 (j), an in personam RICO forfeiture defendant cannot meet the definition of an "innocent party" unless he or she "did *not* have actual or constructive knowledge that the property was subject to forfeiture." (Emphasis supplied.) Id. Thus, the punishment imposed by the forfeiture of an in personam RICO forfeiture defendant's property "'comes into play only on a finding of *scienter*,'" *Hudson v. United States*, supra, 522 U. S. at 99, thereby establishing under the third factor that OCGA § 16-14-7 (m) is criminal in nature.

Turning to the fifth factor in *Hudson v. United States*, supra, 522 U. S. at 99 ("'whether the behavior to which [the punishment] applies is already a crime'"), it is uncontroverted that the only

---

[6] See OCGA § 16-14-7 (m) ("the *state* may bring an in personam action"); id. at (n) (1) (title to any forfeited property to be put in the name of the State); id. at (l) (net proceeds of any sale or disposition of forfeited property to be divided as directed among certain governmental entities). See also id. at (d) (requiring in rem RICO forfeiture proceedings to be brought by district attorney).

[7] Moreover, we note that, in that case, the civil RICO proceeding was instituted four months *after* the forfeiture defendants were arrested on criminal charges.

behavior to which an in personam RICO forfeiture proceeding applies must necessarily constitute a crime, given the definition of racketeering activity in OCGA § 16-14-3 (9) (A) ("racketeering activity" means "to commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit" any of dozens of enumerated crimes) and the requirement that "at least two acts of racketeering activity" be engaged in so as to establish a "pattern of racketeering activity." Id. at (8) (A). Accordingly, the statutory language likewise establishes the criminal nature of the forfeiture punishment imposed by OCGA § 16-14-7 (m) under the fifth factor in *Hudson v. United States*, supra, 522 U. S. at 99.

The facts in this case also reveal the criminal nature of the proceedings appellee brought against appellants. Although these proceedings are predicated upon an alleged manipulation of gasoline pumps at the three South Georgia truck stops, a matter that directly concerns the Department of Agriculture, the governmental authority charged with oversight of gasoline pumps and their accuracy, see OCGA § 10-1-155 et seq.; see also Ga. Comp. R. & Regs. Rules 40-20-1-.11, 40-20-1-.13, the only involvement in these proceedings of officials with the Department of Agriculture was in the capacity of witnesses. Moreover, while a Department of Agriculture official would be the natural choice of State official to bring an in personam RICO forfeiture proceeding[8] against appellants for the alleged gasoline pump tampering if a civil proceeding were the State's goal, the complaint was instead initiated by the district attorney, charged with prosecuting all indictable offenses, see OCGA § 15-18-6 (4), such as the predicate acts set forth in OCGA § 16-14-3 (9) required to establish a pattern of racketeering activity to authorize a RICO forfeiture proceeding. See OCGA § 16-14-7 (a).

However, it is the language utilized by the Camden County District Attorney in the complaint that establishes conclusively the criminal nature of the in personam RICO forfeiture proceedings brought against appellants. The complaint alleges that appellants have directly or through an association with others committed numerous felonies, including theft, credit card fraud and racketeering activity. The entire emphasis of the complaint is on appellants' criminal culpability for the alleged crimes. "Civil forfeiture depends not upon a property owner's culpability but, instead, upon the property's being connected to some criminal act." (Footnote omitted.) 36 AmJur2d, Forfeitures and Penalties, § 19, p. 490.

---

[8] Because OCGA § 16-14-7 (m) operates "[i]n lieu of . . . subsections (c) through (g)," in personam RICO forfeiture proceedings clearly are not subject to the limitation in subsection (d) that requires the district attorney to bring such complaints.

We have little trouble concluding that the in personam RICO forfeiture provision in OCGA § 16-14-7 (m) is, by its nature, necessarily criminal and punitive. We therefore hold that, by the clearest proof, OCGA § 16-14-7 (m) imposes a sanction on appellants that is so punitive in form and effect as to render that proceeding criminal despite the Legislature's language to the contrary. See *Hudson v. United States*, supra, 522 U. S. at 104; *United States v. Ursery*, supra, 518 U. S. at 290.

2. Because OCGA § 16-14-7 (m) is in reality a criminal penalty, see Division 1, supra, its enforcement must conform to the constitutional safeguards that accompany criminal proceedings. The processes underlying civil and criminal proceedings are structurally and fundamentally different, as are the rights to be vindicated in each type of proceeding. See generally *Helvering v. Mitchell*, 303 U. S. 391, 402 (3) (58 SC 630, 82 LE 917) (1938) ("[c]ivil procedure is incompatible with the accepted rules and constitutional guaranties governing the trial of criminal prosecutions"). See also *Pimper*, supra, 274 Ga. at 629-630 (detailing the procedural flaws of OCGA § 16-14-7 (m)) (Hunstein, J., dissenting). It follows that the trial court erred by finding that the civil procedural rules set forth in the CPA are an adequate substitute for the substantive constitutional rights to which appellants are entitled.

3. "Forfeitures are not favored; they should be enforced only when within both letter and spirit of the law. [Cit.]" *United States v. One 1936 Model Ford V-8 De Luxe Coach*, 307 U. S. 219, 226 (59 SC 861, 83 LE 1249) (1939). In the decades since Justice McReynolds wrote those words, and particularly since the enactment of the federal RICO and drug acts in the 1970s, the breadth of new forfeiture statutes as well as the ingenuity of legislatures in crafting novel forfeiture provisions have elicited statements of concern from members of the United States Supreme Court. See *Florida v. White*, 526 U. S. 559, 567 (119 SC 1555, 143 LE2d 748) (1999) (Souter, J., concurring) (noting that "legislatures are evincing increasing ingenuity in" resorting to "novel" forfeiture sanctions); *United States v. James Daniel Good Real Property*, 510 U. S. 43, 81-82 and n. 1 (114 SC 492, 126 LE2d 490) (1993) (Thomas, J., concurring in part and dissenting in part) (expressing concern about the breadth of new forfeiture statutes). Georgia's in personam RICO forfeiture statute is not merely "novel," *Florida v. White*, supra; it is singular. OCGA § 16-14-7 (m) lacks all of the procedural safeguards seen in our federal and sister state counterparts and expressly rejects even the minimum safeguards provided elsewhere in OCGA § 16-14-7 for in rem RICO forfeiture proceedings. While we have recognized that our Georgia RICO statute in general is "significantly broader than its federal counterpart," *Chancey v. State*, 256 Ga. 415, 418 (349

SE2d 717) (1986) (post-conviction challenge to constitutionality of RICO statute), OCGA § 16-14-7 (m) "is so broad that it differs not only in degree, but in kind, from its historical antecedents." *United States v. James Daniel Good Real Property*, supra at 82 (Thomas, J., concurring in part and dissenting in part). Because OCGA § 16-14-7 (m) is so "far removed from the legal fiction upon which the civil forfeiture doctrine is based," id., we conclude that this is the "appropriate case" foreseen by Justice Thomas in which it is necessary "to reevaluate our generally deferential approach to legislative judgments in this area of civil forfeiture." (Footnote omitted.) Id. The trial court's judgment is reversed.

*Judgment reversed. All the Justices concur, except Carley and Melton, JJ., who dissent.*


MELTON, Justice, dissenting.

Because the Legislature clearly intended for the in personam forfeiture provision of OCGA § 16-14-7 (m) to provide for a civil, and not criminal, sanction, I must dissent from the majority's erroneous conclusion that OCGA § 16-14-7 (m) is unconstitutional.

The plain language of OCGA § 16-14-7 indicates that the Legislature intended for in personam forfeiture proceedings to be "had by a *civil* procedure known as a RICO forfeiture proceeding." (Emphasis supplied.) OCGA § 16-14-7 (a), (m). The Legislature has further underscored this intent by requiring that in personam RICO proceedings "be governed by Chapter 11 of Title 9, the 'Georgia Civil Practice Act,' except to the extent that special rules of procedure are stated in this chapter." OCGA § 16-14-7 (b). See also *Helvering v. Mitchell*, 303 U. S. 391, 402 (58 SC 630, 82 LE 917) (1938) ("That Congress provided a distinctly civil procedure for the collection of the additional [fee] indicates clearly that it intended a civil, not a criminal, sanction. Civil procedure is incompatible with the accepted rules and constitutional guaranties governing the trial of criminal prosecutions, and where civil procedure is prescribed for the enforcement of remedial sanctions, those rules and guaranties do not apply."). Despite this clear language and the "strong presumption in favor of the constitutionality of this [statute]" (*Bryan v. Ga. Public Svc. Comm.*, 238 Ga. 572, 575 (234 SE2d 784) (1977)), the majority largely ignores the plain language of the statute in order to strike down the in personam forfeiture provision contained therein.

The majority reasons that "[t]he overwhelming weight of this country's jurisprudence establishes by the clearest proof that in personam forfeitures of assets are criminal proceedings." Maj. Op. at 660. However, the relevant focus of the analysis in this case should not be on the jurisprudence of other jurisdictions, but on whether the specific statutory scheme *in this State* is "so punitive either in

purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." (Citations and punctuation omitted.) *Hudson v. United States*, 522 U. S. 93, 99-100 (118 SC 488, 139 LE2d 450) (1997) (the factors for determining whether statute imposes criminal penalty "must be considered in relation to the statute on its face") (citations and punctuation omitted). The relevant factors that serve as "useful guideposts" (id.) in making this determination are:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment — retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

(Citation and punctuation omitted.) Id. at 99-100. However, "no one factor should be considered controlling as they may often point in differing directions." (Citation and punctuation omitted.) Id. at 101.

A focus on the statutory language here shows that the civil in personam forfeiture proceedings authorized by OCGA § 16-14-7 (m) are not so punitive in purpose or effect as to "transform what was clearly intended as a civil remedy into a criminal penalty." (Citation and punctuation omitted.) *Hudson*, supra, 522 U. S. at 99. Specifically, OCGA § 16-14-7 (m) states in relevant part that "the state may bring an in personam action for the forfeiture of any property subject to forfeiture under subsection (a) of this Code section." Subsection (a) of the statute provides that "[a]ll property of every kind used or intended for use in the course of, derived from, or realized through a pattern of racketeering activity is subject to forfeiture to the state." Looking to the first *Hudson* factor, supra, the sanction imposed by Georgia's statutory scheme "do[es] not involve an affirmative disability or restraint . . . [as it] is certainly nothing approaching the infamous punishment of imprisonment." (Citation and punctuation omitted.) Id. at 104. Furthermore, even though in personam forfeiture has historically been regarded as punishment, this factor alone does not automatically turn a Georgia civil in personam forfeiture proceeding into one that imposes criminal punishment, because the focus of our inquiry is on the *sanction* imposed (see *Hudson*, supra), and not the nomenclature of the proceeding. In this regard, "forfeiture . . . serves a deterrent purpose

distinct from any punitive purpose . . . [by] rendering illegal behavior unprofitable." (Citation and punctuation omitted.) *Bennis v. Michigan*, 516 U. S. 442, 452 (116 SC 994, 134 LE2d 68) (1996). This deterrent purpose is consistent with a civil, rather than criminal, sanction. Id. Moreover, in relation to the seventh factor, the civil in personam provisions in the statute reduce the likelihood of an excessive penalty being imposed, because the State is limited to forfeiting the criminal assets of the actual *owner* of the criminal property being used in a pattern of racketeering activity. OCGA § 16-14-7 (a), (m). It does not reach any further than is necessary to render any illegal behavior of the specific individual involved unprofitable. Indeed, in this sense, the in personam forfeiture provisions of OCGA § 16-14-7 are even more limited in scope than the in rem provisions contained in the same statute. In an in rem proceeding, unlike in an in personam proceeding, regardless of who may actually own the alleged criminal property, the property itself can be seized merely because it has apparently been used by someone, not necessarily just the owner, in connection with a criminal enterprise. OCGA § 16-14-7 (a), (c). Finally, this Court has previously held that a civil in rem forfeiture proceeding that accomplishes the same types of goals as OCGA § 16-14-7 "is legitimately a civil sanction and does not constitute punishment." *Murphy v. State*, 267 Ga. 120, 121 (475 SE2d 907) (1996) (forfeiture of property and controlled substances under OCGA § 16-13-49 (d)). The same result should obtain here, especially where the in personam provisions of OCGA § 16-14-7 provide for a more focused forfeiture of the property of a single individual than the in rem provisions in the same statute that have potentially broader application.

In light of the clear Legislative intent to impose a civil sanction through the in personam forfeiture procedures of OCGA § 16-14-7 (m), and in light of the fact that "there simply is very little showing, to say nothing of the 'clearest proof' . . . that [the] sanctions [imposed by the in personam forfeiture process] are criminal" (*Hudson*, supra, 522 U. S. at 105; *Murphy*, supra, 267 Ga. at 121), I must respectfully dissent from the majority's conclusion that OCGA § 16-14-7 (m) is unconstitutional for "depriv[ing] in personam forfeiture defendants of the safeguards of criminal procedure guaranteed by the United States and Georgia Constitutions." Maj. Op. at 658.

I am authorized to state that Justice Carley joins in this dissent.

DECIDED JUNE 15, 2009 —
RECONSIDERATION DENIED JUNE 30, 2009.

*Alston & Bird, Peter M. Degnan, Gregory B. Mauldin, Zipperer,*

*Lorberbaum & Beauvais, Alex L. Zipperer*, for Cisco.

*Brown, Readdick, Bumgartner & Carter, Terry L. Readdick, Steven G. Blackerby*, for Moore et al.

*Stephen D. Kelley, District Attorney, Jacquelyn L. Johnson, Assistant District Attorney, Bondurant, Mixson & Elmore, John E. Floyd, John J. Ossick, Jr., Savage, Turner, Pinson & Karsman, Robert B. Turner, William B. Johnson, Durham, McHugh & Duncan, James B. Durham, Ekonomou, Atkinson & Lambros, Michael G. Lambros, Oliver, Maner & Gray, Timothy D. Roberts, Greenberg Traurig, Richard A. Serafini, Terry A. Dillard, Clark & Williams, Nathan T. Williams*, for State of Georgia et al.

*Thurbert E. Baker, Attorney General, David S. McLaughlin, Assistant Attorney General, J. Scott Key, Koehler & Riddick, Christine A. Koehler, Laura D. Hogue*, amici curiae.