## S10A1436. PITTMAN et al. v. STATE OF GEORGIA.

(706 SE2d 398)

NAHMIAS, Justice.

Bobby and Judy Pittman ("the Pittmans") and their corporation, Hungry Jacks Foods, Inc. d/b/a Jumping Jacks Convenience Store ("Jumping Jacks"), appeal from the trial court's order that, among other things, appointed a receiver to take control of the assets of and to manage Jumping Jacks. We affirm.

On March 8, 2010, the State brought this action under the

Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act. See OCGA § 16-14-1 et seq. The complaint alleged that the Pittmans and Jumping Jacks ("the defendants") had engaged in numerous illegal acts of commercial gambling since July 15, 2009, by permitting customers of Jumping Jacks to play electronic gaming devices located on the premises. The complaint alleged that the commercial gambling violated OCGA § 16-12-22 and constituted a racketeering activity under OCGA § 16-14-3 (8) and that the association of the Pittmans and Jumping Jacks constituted an "enterprise" under OCGA § 16-14-3 (6). The complaint stated that the State was proceeding in personam against the Pittmans and Jumping Jacks, that their actions violated OCGA § 16-14-4 (a), (b), and (c), and that the State was entitled to the relief provided for in OCGA § 16-14-6 (a) (1) through (a) (5), including an order divesting them of any interest in any enterprise or property related to the alleged RICO violations. Under OCGA § 16-14-7, the State also proceeded in rem against electronic gaming devices and United States currency that the State alleged were seized on March 8, 2010, and sought forfeiture of that property as well as any other property derived from the racketeering activities.

The State prayed for injunctive relief, alleging that the Pittmans "had in their possession, custody and control both personal and real property . . . which were used to further" the racketeering activities and which "were obtained and/or derived through the unlawful acts." The State alleged that unless enjoined, the Pittmans would "conceal and dispose of such personal and real property, including money." The complaint also requested the appointment of a receiver to take control of Jumping Jacks and other in rem property named in the complaint "to insure the availability of such assets to respond to any judgment the court may enter in the action."

Along with the complaint, the State filed a motion seeking a temporary restraining order (TRO) and the appointment of a temporary receiver. The motion requested that the court conduct an ex parte hearing, alleging that notice of the motion "would likely result in the destruction, removal, and concealment of the evidence and instrumentalities of [the criminal activity alleged in the complaint] as well as the fruits thereof." The court conducted an ex parte hearing on March 8, 2010, and granted the motion that same day. The TRO prohibited the Pittmans and Jumping Jacks from, among other things, disposing of any of the documents or assets of the business. The temporary receiver was authorized to manage and take control of the assets of the business.

On April 1, the State filed a motion for an interlocutory injunction and to continue the receivership. At a hearing on the motion held on April 7-8, the State introduced evidence that illegal

gambling with electronic gaming devices had occurred at Jumping Jacks on several occasions since July 2009. Judy Pittman, who served as President of Jumping Jacks, testified for the defendants, denying any knowledge of illegal gambling activity.

On April 9, 2010, the trial court granted the State's motion for an interlocutory injunction, continuing in effect the terms of the TRO. The court also continued the receivership. The court found that the receiver would minimize the harm inflicted on the defendants and that dissolving the receivership and the TRO could leave the State without an adequate remedy should it prevail at trial. The court regarded this outcome as likely, rejecting Judy Pittman's "testimony denying knowledge of store operations and, more specifically, video poker machine operations." The court also noted that the receiver had not yet finished his analysis of the business and related assets and that an accounting would likely be crucial both to the resolution of the case on the merits and to the protection of the defendants' creditors' interests.

The defendants appealed, invoking this Court's equity jurisdiction. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (2).

1. The defendants argue that the TRO was invalid for several reasons, including that the trial court erred in issuing it without notice to them because the State failed to comply with the prerequisites for obtaining an ex parte TRO set forth in OCGA § 9-11-65 (b).[1] These contentions are moot, however, because the TRO has been superseded by the interlocutory injunction, and the defendants do not argue that any alleged error in entering the TRO somehow infected the interlocutory injunction, which was entered after notice to the defendants and a full hearing. See *Stewart v. Brown*, 253 Ga. 480, 481 (321 SE2d 738) (1984); *United Food & Commercial Workers Union v. Amberjack, Ltd.*, 253 Ga. 438, 438-439 (321 SE2d 736) (1984). In any event, we find no merit to the defendants' principal contention that the trial court erred in entering the TRO without notice to them. Our review of the record demonstrates that the verified complaint and the State's attorney's certification were

---

[1] OCGA § 9-11-65 (b) provides:

A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if:

> (1) It clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition; and

> (2) The applicant's attorney certifies to the court, in writing, the efforts, if any, which have been made to give the notice and the reasons supporting the party's claim that notice should not be required.

. . .

sufficient to "show[ ] that immediate and irreparable injury would result unless relief [was] granted before [the defendants] could be heard in opposition . . . [and] why notice should not be required. See OCGA § 9-11-65 (b) (1) and (2)." *Ebon Foundation v. Oatman*, 269 Ga. 340, 343 (498 SE2d 728) (1998). See also *Richardson v. Roland*, 267 Ga. 34, 35 (472 SE2d 301) (1996) ("If there is danger that the assets will be dissipated before the interlocutory hearing, a trial court exercising its sound discretion may appoint a temporary receiver without notice in order to preserve the status quo.").

2. The defendants contend that the trial court erred in issuing the interlocutory injunction and in continuing the receivership. We disagree.

> While it is true that the power of appointing a receiver should be prudently and cautiously exercised and should not be resorted to except in clear and urgent cases (OCGA § 9-8-4), the grant or refusal of a receivership "is a matter addressed to the sound legal discretion of the [trial] court, the exercise of which will not be interfered with [on appeal] unless such discretion be manifestly abused."

*Ga. Rehabilitation Center v. Newnan Hosp.*, 283 Ga. 335, 336 (658 SE2d 737) (2008) (citation omitted). Thus,

> a court may appoint a receiver when any fund or property is in litigation and the rights of either or both of the parties cannot otherwise be protected. The purpose of the receivership is to preserve the property which is the subject of the litigation, and to provide full protection to the parties' rights to the property until a final disposition of the issues.

*Chrysler Ins. Co. v. Dorminey*, 271 Ga. 555, 556 (522 SE2d 232) (1999) (citations omitted). Accord *Ebon Foundation*, 269 Ga. at 344; *Richardson*, 267 Ga. at 35; OCGA § 9-8-1 ("When any fund or property is in litigation and the rights of either or both parties cannot otherwise be fully protected . . . , a receiver of the same may be appointed by the judge of the superior court having jurisdiction thereof."). In addition to the discretion to appoint a receiver, a trial court has discretion "to grant the receiver the necessary powers to do the job that he had been properly appointed to do." *Ga. Rehabilitation Center v. Newnan Hosp.*, 284 Ga. 68, 69-70 (663 SE2d 204) (2008).

Similarly, a trial court has broad discretion to issue interlocutory injunctions to preserve the status quo more generally pending final adjudication of a dispute. See *Ebon Foundation*, 269 Ga. at 344. An

appellate court will not disturb the exercise of that discretion unless it is abused. See id.

Under the circumstances of this case, where the Pittmans controlled the assets that are a subject of the litigation, raising the possibility that they could be dissipated before the litigation is resolved, the trial court did not abuse its discretion in enjoining the Pittmans from disposing of any of the documents or assets of the business and continuing the receivership. See *Ebon Foundation*, 269 Ga. at 343 (holding that because of commingling of corporate and personal assets, the trial court did not abuse its discretion in issuing an injunction and appointing a receiver to protect "the interests of the parties until those assets could be sorted out by a final adjudication of the various claims"); *Richardson*, 267 Ga. at 35 (holding that "[t]he purpose of appointing a receiver is to preserve the property which is the subject of litigation and to provide full protection to the parties' rights to the property during the pendency of litigation '"until the final disposal of all questions, legal or equitable"'" (citation omitted)). Moreover, although the defendants make several vague arguments about the powers granted to the receiver by the trial court, they have failed to show that the court abused its discretion in granting those powers. See *Ga. Rehabilitation Center*, 284 Ga. at 69-70.

3. The defendants contend that the trial court erred in not requiring the State to post a bond under OCGA § 16-14-6 (b).[2] However, because the defendants failed to move in the trial court for the State to post a bond, this issue will not be considered on appeal. See *Cotton, Inc. v. Phil-Dan Trucking*, 270 Ga. 95, 96 (507 SE2d 730) (1998) (holding that a defendant's failure to move the trial court to require the plaintiff to post bond in a RICO case bars the defendant from raising the issue on appeal). The defendants did move for the receiver to post a bond, but the trial court had "discretion [whether or not to] require [the] receiver to give bond conditioned for the faithful discharge of the trust reposed," OCGA § 9-8-10, and we cannot say that the trial court abused that discretion in this case.

---

[2] OCGA § 16-14-6 (b) provides as follows:

Any aggrieved person or the state may institute a proceeding under subsection (a) of this Code section [which permits a superior court, among other things, to order a defendant to divest himself of "any interest in any enterprise, real property, or personal property" acquired through racketeering activity]. In such proceeding, relief shall be granted in conformity with the principles that govern the granting of injunctive relief from threatened loss or damage in other civil cases, provided that no showing of special or irreparable damage to the person shall have to be made. Upon the execution of proper bond against damages for an injunction improvidently granted and a showing of immediate danger of significant loss or damage, a temporary restraining order and a preliminary injunction may be issued in any such action before a final determination on the merits.

4. The defendants contend that the trial court erred in denying the motion to intervene filed by certain Pittman relatives and one of their companies. The court, however, specifically declined to rule on the motion until the State had an opportunity to respond, as provided by Uniform Superior Court Rule 6.2. Because the trial court has not ruled on the motion to intervene, it is not ripe for appellate review. See *State v. Folsom*, 285 Ga. 11, 14 (673 SE2d 210) (2009) (holding that on interlocutory review of one trial court ruling, another issue on which the trial court had not yet ruled was not ripe for review).

5. The defendants contend that the trial court erred in denying their oral motion to dismiss the complaint against the in personam defendants. The defendants' brief states that they will argue this enumeration of error after amending the record to add the transcript of the hearing at which the oral motion was decided. This transcript was certified on May 21, 2010, and it has been filed in this Court, but the defendants have failed to argue the issue. Thus, this enumeration of error is " 'so lacking in specific argument' that [it] should be deemed abandoned." *Hall v. Lance*, 286 Ga. 365, 378 (687 SE2d 809) (2010) (quoting *Head v. Hill*, 277 Ga. 255, 269 (587 SE2d 613) (2003), and citing Supreme Court Rule 22). We therefore express no opinion on this issue.

*Judgment affirmed. All the Justices concur.*

HUNSTEIN, Chief Justice, concurring.

I concur fully with the majority opinion. I write in regard to the State's argument, which we did not have to reach due to the individual appellants' default, see Majority Opinion, Division 5, that the State can still pursue so-called "civil" in personam RICO charges against non-corporate individuals notwithstanding our holding in *Cisco v. State of Ga.*, 285 Ga. 656 (680 SE2d 831) (2009) (civil in personam provisions of the RICO statute are unconstitutional). Contrary to the State's misreading of our discussion of OCGA § 16-14-6 in *Cisco*, supra at 660, **nothing** in that statute authorizes an "end run" around our holding in *Cisco*. OCGA § 16-14-7 (m), which is the statutory source for "civil" in personam RICO proceedings in Georgia, is so woefully lacking in mandatory constitutional protections that, until those constitutional deficiencies are corrected by the Legislature, it must be clearly understood that there can be no constitutional "civil" in personam RICO proceedings in our state courts.

DECIDED FEBRUARY 28, 2011.

*Bryant & Cook, Malcolm F. Bryant, Jr.,* for appellants.

*Hayward Altman, District Attorney, Hall, Bloch, Garland & Meyer, John F. Kennedy, Michael G. Lambros, Andrew Ekonomou,* for appellee.