**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and ADAMS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**July 13, 2012**

# In the Court of Appeals of Georgia

A12A0313, A12A0314. SMITH et al. v. CISCO et al. (two cases).

ADAMS, Judge.

In 2008, the District Attorney for the Brunswick Judicial Circuit (the State) initiated in personam and in rem forfeiture proceedings in the Superior Court of Camden County, Georgia under Georgia's Racketeer Influenced and Corrupt Organizations (RICO) Act, OCGA 16-14-1. In its complaint, the State sought forfeiture of both cash and property that had been used or acquired in a pump rigging scheme allegedly devised by the in personam defendants,[1] who were owners and operators of three fuel plazas (the in rem defendants) located along I-95 in south Georgia, which caused customers to pay for a greater quantity or quality of fuel than

---

[1] In *Cisco*, our Supreme Court declared OCGA § 16-14-7 (m), which provided for in personam RICO forfeitures, unconstitutional. 285 Ga. At 657.

was actually dispensed at the pumps. See also *Cisco v. State of Ga.*, 285 Ga. 656 (680 SE2d) (2009).

Based on these same underlying facts, former customers Jonathon Smith, Streamline Logistics, LLC, Betty Padgett, and B & L Express, Inc., appellants herein, filed a class action in federal district court, seeking to recover five million dollars in compensatory damages as well as punitive damages, expenses of litigation and attorney fees based on claims of fraud, negligent misrepresentation, negligence, money had and received, unjust enrichment, and violations of Georgia's Uniform Deceptive Trade Practices Act. These same parties also filed a motion to intervene, individually and on behalf of others similarly situated, in the state forfeiture proceedings and the trial court granted their motion pursuant to OCGA § 16-14-6 (d). Additionally, two oil jobbers or suppliers, Gowen Oil Company and Sommers Oil Company (hereinafter oil jobbers), also were allowed to intervene in the state forfeiture proceedings and they also filed claims of interest in these proceedings.

In April 2010, Fairley Cisco, one of the named defendants, died, and shortly thereafter, the "Ciscos defendants," which included Fairley's daughters Aletha and Tammy and the corporations they controlled, entered into a settlement agreement with the State and an order of partial distribution was entered which incorporated the terms

of that agreement. Pursuant to the agreement and order, $2,750,000[2] was forfeited to the State, and with the State's consent, the forfeiture claims against the remaining funds which had been seized from the Cisco defendants or Fairley Cisco (Cisco Funds) were dismissed with prejudice, and those funds were disbursed either to or for the benefit of the Ciscos. Further, the order and agreement provided that any property belonging to Fairley Cisco remaining with the receiver was to be released and returned to be held in trust until it could be distributed to his heirs or beneficiaries, and any and all forfeiture claims which had been made against Fairley Cisco, his estate, or any property belonging thereto were dismissed with prejudice.

The rights of both the appellants and oil jobber intervenors were also specifically addressed in the settlement agreement and order of partial disposition. Concerning the oil jobbers, the settlement agreement provided as follows:

> It is anticipated and understood that the Cisco Defendants will, following the execution of the attached order, consummate a settlement agreement with Gowen Oil Company and Sommers Oil Company. It is further understood that, as part of that settlement, Gowen Oil Company and Sommers Oil Company will each release any claims that they may have against the Cisco Defendants, the estate of Fairley Cisco, the

---

[2] Of this amount, $400,000 was deemed to be administrative funds for the payment of fees and expenses instead of forfeited funds.

Receiver, and/or any funds forfeited by the Cisco Defendants. Additionally, Gowen Oil Company and Sommers Oil Company will each dismiss with prejudice all claims that they have asserted in this action.

Thus, pursuant to the settlement agreement, the oil jobbers' claims would be satisfied by the Cisco defendants instead of being paid out of the forfeited funds.

The trial court also made a specific finding regarding the appellants:

[t]hose intervenors only have a right in this action to seek recovery of some or all of the assets actually forfeited to the State, and those parties have no independent right to seek forfeiture. Inasmuch as the right to seek a forfeiture is vested entirely in the State, this Court finds that the intervenors have no standing to object to the total amount of the forfeiture obtained or accepted by the State. Likewise, the remaining defendants in this case have no standing to complain of or object to the amount of the forfeiture as to the Cisco defendants. For these reasons and in the interest of judicial economy, this Court finds and declares that a hearing regarding this forfeiture and the amount thereof is unnecessary. Furthermore, as noted above, the intervenors in this action will be given an opportunity to present their claims against the property hereby forfeited.

Further, the order of partial disposition provided that the forfeited property would be distributed in accordance with OCGA § 16-14-6 (d) and OCGA § 16-14-7

(k) and (l) to any injured person who intervened, and that any intervenors would be provided an opportunity to be heard and to present evidence and argument prior to the distribution of the funds.

A few days later, appellants filed their opposition and objections to the order of disposition, arguing, inter alia, that the trial court was without authority to take any action concerning the property belonging to Fairley Cisco until a proper substitution of party had been made, that the consent order made no provision for the distribution of the funds to defrauded purchasers and that they had not been afforded an opportunity to "voice" their concerns prior to the execution of the order.

Approximately ten days later, the trial court entered an order setting a hearing on the procedure to be used for the submission and adjudication of claims to the forfeited funds, specifically providing that "[a]ll persons and parties having an interest in the claims submission and adjudication process may appear and be heard." Shortly thereafter, the appellants filed a motion to vacate any order which had been entered after Fairley Cisco's death, and to stay the proceedings until a substitution of party had been made.

The appellants also had sought to recuse the trial judge, and that motion was granted and the case reassigned to another judge in March 2011. On April 21, 2011,

that newly assigned judge entered an order denying the appellants' motion to vacate those orders which had been entered after Fairley Cisco's death, reasoning that the partial disposition order had been entered with the consent of the State and the remaining defendants, and that the State had released any interest in the property of the estate of Fairley Cisco, thus ensuring that neither Fairley Cisco nor his estate were subject to any further forfeiture claims. On that same day, the court also entered an order finding that, because the right of intervention under OCGA § 16-14-6 is limited to making a claim for actual losses suffered, appellants only had standing to object to those pleadings or orders that specifically addressed their claims for actual losses. The court then adopted and approved the order of partial disposition entered on May 27, 2010.

On April 27, 2011, the court approved the proposed method and form that was to be used to notify persons who had potential claims to the forfeited funds. Although the appellants had never sought to be certified as a class under state law, the trial court entered an order on May 10, 2011 declining to certify the appellants as a class or to allow the federal class action plaintiffs to intervene as a class, although the court allowed the class members to submit individual claims under the procedure that had been established for that purpose.

6

The trial court subsequently issued certificates of immediate review from these orders, and the appellants filed applications for interlocutory review in this Court, which we granted. Appellants then timely filed their notices of appeal, as amended, and these cases were docketed in this Court as A12A0313 and A12A0314, which we have consolidated for review. As more fully set forth below, we now affirm.

### Case No. A12A0313

1. The appellants first argue that the trial court erred by determining that they lacked standing to contest the settlement agreement and order of partial distribution, arguing that they had the right to protect their claims to the forfeited property, which they argue "necessarily includes the right to challenge which property was forfeited." Therefore, appellants reason, they should have been allowed to participate in the negotiations and court proceedings leading up to the final adjudication of forfeiture. Moreover, appellants argue[3] that once they were allowed to intervene, they enjoyed

---

[3] First we note that although appellants do not directly take issue with the rationale the trial court stated as a basis for its ruling–that intervention under OCGA § 16-14-6 (d) is "limited to making a claim for actual losses suffered as a result of conduct in violation of the RICO statutes[,]" we agree with the State that appellants are, in fact, attempting to use OCGA § 16-14-6 (d) to create a "superfund" from which successful private plaintiffs might satisfy . . . judgments [obtained by other civil remedies] if they could obtain them." And although other subsections of OCGA § 16-14-6 provide for additional remedies that may be pursued directly by injured or aggrieved persons, those are separate from the right of an injured person to make a

7

the same rights as any other intervenor under the Civil Practice Act which, pursuant to OCGA § 16-14-7, governs these proceedings and thus "for all intents and purposes" they should be accorded the same status as the "original parties," to these proceedings. Further, they argue that the specific statutory framework surrounding RICO forfeiture proceedings demonstrates that they were granted the right to intervene to protect their claims against the forfeited property, including the right to challenge the State's unilateral designation of what property was subject to forfeiture.

We do not agree with appellants' characterization of their role in these proceedings. Pursuant to OCGA § 16-14-7 (d), "[a] RICO forfeiture proceeding shall be instituted by complaint and prosecuted by the district attorney of the county in which the property is located or seized." Further subsection (a) provides, in relevant part, that the specified property "is subject to forfeiture *to the state.*" (Emphasis supplied.) Thus, it is the State, and only the State, acting through the appropriate district attorney, that has the right to institute *and prosecute* forfeiture proceedings, and the property is specifically forfeited to the State, not to the injured or aggrieved person or persons. As our Supreme Court has explained, "A RICO forfeiture proceeding is not an available avenue for Georgia's aggrieved citizens but is a claim against property forfeited to the State.

proceeding that can only be initiated by the State pursuant to OCGA § 16-4-7." *Cisco*, 285 Ga. at 660. Thus, while it is true that OCGA § 16-14-6 (d) allows an injured person to intervene and to make a claim *to the forfeited property* and that claim is superior to that of the State, there is nothing in the statute that gives injured persons the right to dictate to the State which property should be *forfeited to the State.* Thus, contrary to their assertion otherwise, we discern nothing in the statute that prevents the State from making a "unilateral decision" concerning which property it will pursue in the forfeiture proceedings. Based on the foregoing, the trial court did not err by finding that the appellants lacked standing to participate in the State's decision making process or negotiations concerning which property should be forfeited.

2. Appellants also argue that the trial court should have vacated any order, including the order of partial disposition, that was entered after Fairley Cisco's death because a substitution of parties had not been made at the time those orders were entered and hence those orders were void. But the State dismissed all its claims against the property that had belonged to Fairley Cisco, and we know of no law that prohibits the State from instituting and then abandoning civil RICO forfeiture claims prior to the property actually being forfeited to the State. And, as stated in Division 1, the appellants lacked standing to object to the State's decisions concerning which

property was subject to forfeiture. Further, appellants cite no law that would prevent a disposition concerning the remaining property or any law that mandates that the State cannot settle as to the remaining in rem forfeiture claims. "While the death of a party does not abate a pending action where the cause of action survives . . . nevertheless the effect of the death is to suspend the action *as to the decedent* until someone is substituted for the decedent as a party to the proceedings. (Cits.) Until someone is properly substituted as a party after the action is thus suspended, further proceedings in the case are void *as to the decedent*." *Allen v. Cloudburst Manu. Co.*, 162 Ga. App. 188 (290 SE2d 529) (1982). See also *McCarley v. McCarley*, 246 Ga. App. 171, 172 (539 SE2d 871) (2000) ("Until substitution is made, the proceedings are void as to the deceased party."). Thus, we find this argument also to be unavailing.

### *Case No. A12A0314*

In this appeal, Appellants enumerate two errors, first that the trial court erred by ruling that the Federal Class Action plaintiffs, as a class, could not make claims against the forfeited funds. Appellants also contend that the trial court erred in determining that the procedures that were established to notify potential claimants of their right to collect against the forfeited funds were adequate. However, appellants

have not set out their arguments in support of these enumerations to correspond to their separately enumerated errors, as required by the rules of this Court,[4] and it is with some difficulty that we have attempted to discern appellants' arguments in support of their enumerations, which appear to be scattered throughout their brief. Further, our ability to cogently decipher their arguments has also been hampered by the fact that their brief in this appeal in part appears to address the errors enumerated in Case No. A12A0313, not the issues raised in this appeal. But appellants do present some argument in support of the errors they enumerate in this appeal, and we will endeavor to address those contentions.

3. We turn first to whether the trial court erred by not allowing the class actions plaintiffs to intervene as a class, instead limiting their right to intervene to an assertion of their individual claims. As more fully set forth below, we find no error.

The appellants sought to intervene in this case "[i]ndividually and on behalf of others similarly situated," and in the order granting the motion to intervene, the trial court noted that the appellants were plaintiffs in the related federal class action. However, at the time the intervention order was entered, appellants had not been

---

[4] Pursuant to Court of Appeals Rule 25 (c) (1), "[t]he sequence of arguments in the briefs shall follow the order of the enumeration of errors, and shall be numbered accordingly."

certified as a class in the federal class action or any other case, and thus, contrary to the assertion in their brief, they had not been allowed to intervene as a class by the original judge in the forfeiture proceedings. Moreover, it is undisputed that appellants never sought a separate class certification under state law in the forfeiture proceeding, and they enumerate no error as to the trial court's order declining to certify the class under state law.

Further, appellants have cited no authority supporting their contention that a federally certified class in a federal class action case should be considered to be an "injured person," as that term is used in OCGA § 16-14-6 (d), in proceedings instituted under a state RICO forfeiture provision. Lastly, although appellants argue that "[t]he Trial Court and State are effectively attempting to administer a class action through a civil forfeiture case," it appears to us that it is appellants who are trying to use the property or funds forfeited in this State RICO proceeding as a recovery "superfund" for their federal class action claims.[5] Thus, based on the foregoing, we

---

[5] The claim form used in the RICO proceeding provided that only actual damages incurred as the result of the pumping scheme could be recovered against the funds.

12

believe that the trial court properly allowed only the individual members of the class to assert their claims against the forfeited funds or property.[6]

4. Lastly, appellants contend that the procedure the trial court approved to notify potential claimants was too limited in geographic scope. Although appellants state that this order was "again issued without *motion*" the order certainly was not issued without *notice*, as the record discloses that the trial court entered an order on June 10, 2010 that provided that a hearing would be held on June 21, 2010, to establish the procedures for identifying and notifying potential claimants, and specifically gave "[a]ll persons and parties having an interest in the claims submission and adjudication process" an opportunity to appear and be heard. And in fact the appellants' attorney appeared at the hearing on these issues, but voiced no objection to the procedure adopted to notify potential claimants mentioning only that a notice procedure had already been submitted in the federal action and that the advertising there "would be, I know, probably more extensive than maybe the Court here would . . . direct." Further, appellants have not shown in the record where they later objected

---

[6] Although the court instructed appellants' attorneys to file motions to intervene on behalf of all potentially injured persons whom they represented, it does not appear such motions were filed.

to the notice procedure, and we will not search this 25 volume record in an attempt to determine if they ever took any action to raise this issue before the trial court, secure a ruling on this issue, or otherwise preserve it for appellate review.[7] "Because these assertions were neither raised nor ruled on in the court below, they present nothing for review. See *City of Gainesville v. Dodd*, 275 Ga. 834, 838 (573 SE2d 369) (2002). ('The tenet that the appellate courts do not rule on issues not ruled on by the trial court preserves the appellate court's jurisdiction and delineates the proper rules of the courts at the trial and appellate levels. The primary role of the appellate courts, and, in general, their jurisdiction, is properly preserved only when there is a ruling below.')" *Covington v. Johnson*, 284 Ga. 426 (667 SE2d 618) (2008). Accordingly, appellants will not now be heard to complain about the procedure established for notifying potential claimants.

*Judgments affirmed. Doyle, P. J., and Andrews, J., concur.*

---

[7] Further we take this opportunity to remind counsel that proper citation to the appellate record *includes citation to the volume or part* of the record or transcript *and the page numbers* that appear on the appellate record or transcript. Court of Appeals Rule 25 (a) (1).