**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 21, 2020**

# In the Court of Appeals of Georgia

A20A1327. SCOTT v. THE STATE.

RICKMAN, Judge.

Following a jury trial, Sedarious Deangelo Scott was convicted on two counts of armed robbery; three counts of aggravated assault; possession of a firearm during the commission of a felony; obstruction; and possession of a firearm by a convicted felon. He filed a motion for new trial, which the trial court denied. Scott argues that the trial court erred by admitting evidence of a prior crime pursuant to OCGA § 24-4-404 (b), and further erred by failing to grant him a new trial after determining that his trial counsel rendered ineffective assistance by failing to seek a nonnegotiated plea after Scott expressed a desire to plead guilty during the trial. Although we agree with Scott that the trial court erred by admitting the other acts evidence, we conclude that the court's admission of the evidence was harmless under the facts of this case. We,

therefore, affirm his conviction. Scott's additional argument that the trial court erred with respect to its ruling on his claim for ineffective assistance is not ripe for our review.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 US 307 (99 SCt 2781, 61 LEd2d 560) (1979).

*Robinson v. State*, 348 Ga. App. 285 (822 SE2d 35) (2018).

So construed, the evidence adduced at trial showed that at approximately 3:20 a.m. on July 25, 2013, Scott, wearing a gray hooded sweatshirt, and a second man, Damien Lee Parker, wearing a black hooded sweatshirt, entered into a McDonald's restaurant in Lilburn, Georgia. Both men were carrying handguns and had masks covering the bottom half of their faces. As they entered, they passed an employee who sensed impending trouble and went into the bathroom and called 911. Parker pointed his gun at a second employee and demanded money from him. The employee gave him $10. Parker then grabbed a third employee, pointed the gun at her head, and

2

repeatedly asked about "the money." The employee called out for her manager as Parker forced her into the manager's office. The manager already had the safe open and was making deposits for the evening, and Parker pointed the gun at her while Scott took the cash from the safe. The manager testified that both of the men were wearing gloves.

The assailants exited the restaurant, entered into a red Ford Explorer, and fled. An employee followed them outside and was able to point the then-arriving law enforcement officers to the suspects' vehicle, which was on the next block.

The responding officers, both from the City of Lilburn Police Department, followed the suspects' vehicle in separate patrol cars until it turned into the parking lot of an apartment complex that was adjacent to and approximately .3 miles from Scott's residence. The assailants eventually jumped out of the moving vehicle and fled into the woods on foot. One of the officers pursued the men, but was unable to apprehend either of them that night.

Approximately 17 minutes after the suspects fled into the woods, a woman called 911 to report that her red Ford Explorer had been stolen. Two officers from the Gwinnett County Police Department responded to the call and spoke to the vehicle owner and her boyfriend. Aware that an armed robbery had occurred and that a red

3

Ford Explorer had been abandoned by the suspects, the officers warned the couple that it was a crime to make a false police report. The couple then changed their stories and declined to report the vehicle stolen, and instead the boyfriend informed the officers that he had loaned the vehicle Parker.

The Gwinnett County officers passed Parker's name to the Lilburn officers investigating the crime, and his identity as the passenger in the Explorer was later confirmed by the Lilburn officers who had engaged in the initial high-speed chase, both of whom saw his face as he fled and confirmed his identity from a still photograph taken from one of the patrol car's dashcam video recording.[1]

Meanwhile, the abandoned Ford Explorer was searched, its contents were seized, and both the vehicle and some of the items it contained were processed for fingerprint and DNA evidence. Included among the seized items were three cellular phones, one belonging to Scott and containing his social security card in the phone case, and one belonging to Parker; a gray hooded sweatshirt on the driver's seat; a black hooded sweatshirt on the back seat; a pair of latex gloves on the ground outside of the driver's side door; and a latex glove from the center console. A fingerprint matching Scott's was lifted from the vehicle's passenger-side door, and his DNA

---

[1] Parker was later tried and convicted of the crime.

4

profile matched that of DNA that was found inside one of the latex gloves located outside the driver's side door.

Scott was subsequently arrested and charged with the crime. At trial, in addition to the physical evidence from the vehicle, the State presented testimony from the owner of the red Ford Explorer, who stated that Scott and Parker were friends with her boyfriend and had been together at her apartment on the night of the robbery. She further testified that, although she had gone to bed, Scott and Parker had left at some point and her boyfriend remained. Sometime thereafter, she was awakened when her boyfriend's cellular phone rang during the early morning hours, and he then instructed her to call 911 and report her vehicle stolen. The Lilburn officer who chased the men as they fled into the woods identified Scott as the driver and Parker as the passenger of the vehicle.[2]

The jury convicted Scott on all counts. He filed a motion for new trial, which the trial court denied. This appeal followed.

---

[2] The officer in question did not identify Scott as the man he had chased until immediately before trial. At the motion for new trial hearing, it was revealed that the officer's identification of Scott caught his counsel unawares and that there may have been additional grounds on which counsel may have challenged his credibility on cross-examination that went unexplored. Nevertheless, Scott has not raised any issue surrounding the officer's identification testimony or his counsel's handling of that issue on appeal.

1. Scott argues that the trial court erred by admitting evidence of a prior crime under OCGA § 24-4-404 (b) ("Rule 404 (b)"). Although the State sought to introduce the evidence to prove intent, the trial court admitted it to prove identity.[3]

The State thereafter presented evidence that four years prior to the charged crimes, in July 2009, Scott had been out with three other individuals (none of them Parker). One or more of the men lived in the apartment complex adjacent to Scott's residence, which is the same apartment complex to which Scott and Parker drove as

---

[3] The State argues that the trial court abused its discretion by rejecting its proffered non-propensity purpose of intent to admit the evidence, and instead holding that it was admissible for the purpose of establishing identity. It further argues that even if we conclude that the trial court erred by admitting the evidence to show identity, which we do, that we should affirm the court's ruling as right for any reason because the evidence was admissible for the purpose of establishing Scott's intent. First, we note that the State made no objection to the trial court's admission of the evidence for a different purpose, and further, that the admission of evidence to establish intent also involves a similarity analysis, albeit a less stringent one. See generally *Jackson v. State*, 306 Ga. 69, 79, n.10, 12 (2) (b) (ii) (829 SE2d 142) (2019); *Castillo-Velasquez v. State*, 305 Ga. 644, 648 (2) (827 SE2d 257) (2019). But nevertheless, the trial court instructed the jury before the evidence was admitted and again in its final charge that the jury could consider the other acts evidence only for the purpose of showing Scott's identity, and did not mention intent. Because we have concluded that the admission of the evidence was harmless under the facts of this case, we need not consider whether it may have been properly admitted for any other purpose. See *Jackson,* 306 Ga. at 79, n.10 (warning that "[p]rosecutors and courts should . . . be wary of the temptation to use evidence that was admitted solely to show [one non-propensity purpose] for other purposes . . ."); see also *Howell v. State*, 307 Ga. 865, 875, n.10 (3) (838 SE2d 839) (2020).

they fled from the police in the charged crimes. As Scott and his friends were returning home at approximately 4:30 a.m., they stumbled upon an intoxicated male who had apparently passed out in the grass while exiting his vehicle. The men began rummaging through the man's pockets and his vehicle, and at some point, the man woke up and began objecting. Scott and his friends physically beat and kicked him, and at least one witness testified that Scott held a gun to the man's head.

As law enforcement officers arrived, the suspects ran into the same wooded area that Scott and Parker had fled in the charged crimes, although Scott and his friends were all caught and apprehended that night. Scott informed the officers where in the woods the handgun could be located, and it was subsequently retrieved. Scott was charged with armed robbery for his role in the crime, but he was convicted of the lesser-included crime of robbery.

Rule 404 (b) prohibits the use of other acts evidence to show an accused's propensity to commit a crime. Nevertheless, such evidence may "be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." OCGA § 24-4-404 (b). To determine whether other acts evidence is admissible for these proper purposes,

the State must satisfy a three-part test: (1) the evidence needs to be relevant to an issue other than bad character; (2) the probative value of the other acts evidence cannot be outweighed substantially by its unfair prejudice; and (3) there must be sufficient proof to enable the jury to find that the accused committed the other acts.

(Citations and punctuation omitted.) *Brooks v. State*, 298 Ga. 722, 724 (2) (783 SE2d 895) (2016).

The analysis to determine whether other acts evidence is relevant to the issue of identity, as distinguished from the defendant's bad character, is a particularly stringent one. See *Brooks*, 298 Ga. at 725 (2). In that determination, "the likeness of the offenses is the crucial consideration." (Citation and punctuation omitted.) Id. To that end,

[t]he physical similarity must be such that it marks the offenses as the handiwork of the accused. In other words, the evidence must demonstrate a modus operandi. The extrinsic act must be a 'signature' crime, and the defendant must have used a modus operandi that is uniquely his. The signature trait requirement is imposed to ensure that the government is not relying on an inference based on mere character — that a defendant has a propensity for criminal behavior. Evidence cannot be used to prove identity simply because the defendant has at other times committed the same commonplace variety of criminal act.

(Citations and punctuation omitted.) Id.

Of course, the charged crimes and the prior crime need not be, and never will be, identical in every detail. "But they must possess a common feature or features that make it very likely that the unknown perpetrator of the charged crime and the known perpetrator of the [prior] crime are the same person." (Citation and punctuation omitted.) *Heard v. State*, __ Ga. __ (3) (f) (844 SE2d 791) (2020).

> The more unique each of the common features is, the smaller the number that is required for the probative value of the evidence to be significant. But a number of common features of lesser uniqueness, although insufficient to generate a strong inference of identity if considered separately, may be of significant probative value when considered together.

(Citation and punctuation omitted.) Id.

(a) The prior crime admitted in this case for the stated purpose of proving identity is an obvious example of propensity evidence. There is nothing peculiar or unique about these two crimes that would mark them "as the handiwork" of the same individual or that would "demonstrate a modus operandi." *Brooks*, 298 Ga. at 725 (2). One was a planned armed robbery of a fast-food establishment, the other was a random crime of opportunity. And although, as noted by the trial court, there were

some similarities — both occurred during the early morning hours and in the month of July, both involved more than one perpetrator, both involved the use of a handgun, both involved the taking of cash from a victim — none of those features are remotely unique to these particular crimes or to this particular individual. The most significant similarity was the apartment complex and the suspects' flight into the same wooded area, but similar locations alone is not sufficient evidence of identity in the absence of "more unusual similarities to indicate a signature crime." *Heard*, __ Ga. at __ (3) (f).

Any similarities in the crimes are vastly undermined by their significant differences. See *Brooks*, 298 Ga. at 725 (2) (recognizing that under Rule 404 (b), "we are charged to consider the dissimilarities as well as similarities in determining whether other acts evidence is admissible to show identity"). There is no reason to believe that a person who entered into a McDonald's restaurant in the middle of the night and robbed its employees at gunpoint was the same person who, four years earlier, stumbled upon an unconscious drunk man while returning home and then stole from and physically assaulted him. See generally *Heard*, 844 SE2d at 801-803 (3) (f); *Brooks*, 298 Ga. at 725-726 (2); *Amey v. State*, 331 Ga. App. 244, 249 (1) (a) (770 SE2d 321) (2015). Because nothing in the features of the charged crimes and the

10

prior crime "viewed individually or as a whole, marked those crimes as the unique 'signature' of the same perpetrator," the trial court abused its discretion by admitting evidence of that crime to prove Scott's identity. *Heard*, 844 SE2d at 803 (3); see also *Brooks*, 298 Ga. at 726 (2); *Amey*, 331 Ga. App. at 249 (1) (a).

(b) Although the admission of the other acts evidence was error, "[t]he error was evidentiary and not of constitutional dimensions, and the test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." (Citation and punctuation omitted.) *Jackson v. State*, 306 Ga. 69, 80 (2) (c) (829 SE2d 142) (2019); see also OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"). "In determining whether the error was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so." (Citation and punctuation omitted.) *Jackson*, 306 Ga. at 80 (2) (c).

The evidence here showed that Scott and Parker were together on the night of the crime and left their friend's apartment in a red Ford Explorer. The victims of the McDonald's robbery described the assailants as wearing a gray hooded sweatshirt and a black hooded sweatshirt, and one confirmed that the men were wearing gloves.

11

After the suspects fled the McDonald's in a red Ford Explorer and ran into the woods near Scott's residence, a gray hooded sweatshirt was recovered from the vehicle's driver's seat, and a black hooded sweatshirt from the backseat. A glove containing DNA matching Scott's was found outside of the driver's side door. Scott's cellular phone and social security card were found in the console of the vehicle. And the officer who chased both Scott and Parker as they fled identified Scott as having been the driver.

Faced with this evidence, we conclude that it is highly probable that the erroneously admitted evidence of the prior crime did not contribute to the jury's guilty verdict. See *Jackson*, 306 Ga. at 81 (2) (c); *Howell v. State*, 307 Ga. 865, 875-876 (3) (838 SE2d 839) (2020);

2. Scott further contends that the trial court erred by not granting him a new trial after concluding that his trial counsel rendered ineffective assistance. Specifically, the trial court held that Scott's counsel was deficient because she failed, once Scott expressed a desire to enter a guilty plea during the trial, to explore the possibility of entering a non-negotiated guilty plea. The trial court further held that the deficiency "likely contributed to the defendant receiving a harsher sentence after trial than he may have received had he entered a non-negotiated plea." Nevertheless,

12

the trial court concluded that the proper remedy for the ineffective assistance related to the plea negotiation was not a new trial, but rather a "further hearing for the purposes of determining what relief the defendant is seeking and whether or not said relief is appropriate under the law."

The instant appeal was filed before the trial court conducted the hearing or determined the appropriate remedy. Thus, this issue is not ripe for appellate review. See generally *Pittman v. State*, 288 Ga. 589, 594 (4) (706 SE2d 398) (2011).

*Judgment affirmed. Dillard, P. J., and Brown, J., concur.*